608 P.2d 57

**Michael A. LUNA, Petitioner/Appellant,**

v.

**Donna Lou LUNA, Respondent/Appellee.**

No. 2 CA–CIV 3326.

Court of Appeals of Arizona, Division 2.

Dec. 27, 1979.

Rehearing Denied Feb. 6, 1980.

Review Denied March 4, 1980.

---

* Judge MARY M. SCHROEDER, having participated in the original opinion, but having left the Court of Appeals, the Honorable JACK L. OGG sat in this matter in her stead.

Aboud & Aboud by John Eli Aboud, Tucson, for petitioner/appellant.

Sorenson, Moore & Benham by J. William Moore, Phoenix, for respondent/appellee.

## OPINION

HATHAWAY, Judge.

This appeal questions the trial court's division of community property, allocation of community debts, awarding of attorney's fees and the wording of the decree of dissolution.

The parties were married in Arizona in 1953 while the petitioner was in the Air Force. In 1968, he was placed on the temporary disability retired list (TDRL) because of a diagnosis of multiple sclerosis. At the time he had served slightly over 15 years. In 1970, he was removed from the TDRL and permanently retired with a disability rating of 100%. The parties were separated in 1976 and petitioner filed for dissolution of the marriage in 1977. The parties stipulated that there would be no spousal maintenance, and the only issues presented to the trial court were the division of the community property and the question of respondent's attorney's fees. At the time of the hearing, petitioner was receiving monthly $1,253.00 in disability retired pay and $380.00 in Social Security disability benefits.

Petitioner first challenges the trial court's determination that the entire $1,633.00 he receives each month was community property. He claims the entire amount is his separate property. We find that neither position is correct, as part of the amount received is his separate property and part is community property.

The Social Security disability benefits received by petitioner are paid under 42 U.S.C. Sec. 423. Under the same subchapter of Title 42 is Sec. 407 which states:

"407. Assignment

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

The United States Supreme Court in *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), stated that Sec. 407 ". . . im-

poses a broad bar against the use of any legal process to reach all social security benefits." 409 U.S. at 417, 93 S.Ct. at 592.

This protection from attachment through legal process was reaffirmed by the court in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), where, when discussing 45 U.S.C. Sec. 231m dealing with railroad retirement benefits, the court stated:

"Section 231m plays a most important role in the statutory scheme. Like anti-attachment provisions generally, see *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973); *Wissner v. Wissner*, [338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950).] supra, it ensures that the benefits actually reach the beneficiary. It preempts all state law that stands in its way." 99 S.Ct. at 809.

Appellee maintains that the wording of Sec. 231m differs materially from Sec. 407 because the former contains the words "[n]otwithstanding any other law of the United States, or of any State . . ." while the latter does not. The significance of the quoted words is explained by the court in a footnote which sets forth the Congressional intention of using that language to protect the benefits from federal and state taxation. 439 U.S. 572, 582 n.17, 99 S.Ct. 802, 809 n.17, 59 L.Ed.2d 1.

■ While not addressed by the parties, we believe it necessary to discuss the issue of awarding appellee an offsetting award from community property to compensate her for her interest in petitioner's expected benefits from Social Security. We adopt the reasoning of *Hisquierdo*, supra, 439 U.S. at 586, 588, 99 S.Ct. at 811, 812, where the court held that an offsetting award would defeat the purpose of barring the anticipation of payments. There the court stated that the Railroad Retirement Act resembled a trust and that an offsetting award would improperly anticipate payment by allowing the respondent to receive her interest before the date Congress has set for any interest to accrue. That reasoning is even more applicable here as the Social Security disability payments are paid from the "Fed-

eral Disability Insurance Trust Fund." 42 U.S.C. Sec. 401(b).

■ We therefore hold that the Social Security disability benefits received by petitioner are his separate property and no offsetting award can be made to respondent/appellee.

The issue of the military disability retired pay received by petitioner is more difficult to resolve.

■ Petitioner maintains that these payments are from the Veterans Administration and are covered by provisions similar to Sec. 407 discussed above. We reject this contention. When petitioner was transferred from the TDRL to permanent disability retirement, his retirement orders stated that the transfer and retirement was in accordance with 10 U.S.C. Sec. 1201 and Sec. 1210. While the Armed Forces use the Veterans Administration schedule of rating disabilities, there is a distinction between military disability retired pay received under Title 10 and Veterans Administration disability compensation received under Title 38. Here petitioner is receiving military disability retired pay computed under 10 U.S.C. Secs. 1401, 1401a, and the provisions of Title 38 U.S.C. are not applicable, except for those sections of Title 38 U.S.C. which provide for the payment of certain benefits to veterans and the dependents of veterans who are permanently disabled. These additional benefits received from the Veterans Administration are not in lieu of Title 10 retired pay, and entitlement to receipt of these benefits is not dependent upon the veteran receiving disability compensation from the Veterans Administration. Under 38 U.S.C. 3105, a retired member of the armed forces who is in receipt of retired pay under any provision of Title 10 U.S.C., can waive a portion of his military retired pay and receive instead a pension under the laws administered by the Veterans Administration. The record fails to disclose any election under 38 U.S.C. 3105 and therefore the entire amount received as disability retired pay by petitioner is military disability retired pay.

Having determined that the payment is a form of military retired pay, we must now decide what portion of that monthly amount is community property.

Section 1201 of Title 10 provides that the secretary of the military department concerned may retire a permanently disabled member of the armed forces with "retired pay" if, inter alia, his disability rating is 30% or higher and he has served at least eight years.[1] Section 1401, which applies both to those retired for disability reasons and to the service member retiring for other reasons, permits the veteran to elect between two alternative means of computing his "retired pay."[2] He can compute his pay on the basis of longevity, receiving 2½%

of his monthly basic pay for each year of service. We shall refer to retired pay, computed in this manner, as "retirement benefits" as that term is used in *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977). Alternatively, the veteran can compute his pay on the basis of his disability, by multiplying his monthly basic pay by the percentage of his disability. We shall refer to retired pay computed in this manner as "disability pay." Under either alternative, retired pay is limited to 75% of the veteran's final monthly base pay, 10 U.S.C. Sec. 1401.

In the present case, the first alternative would result in petitioner receiving "retirement benefits" equal to 37½% of his month-

1. "Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 270(b) of this title) for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also determines that—

(1) based upon accepted medical principles, the disability is of a permanent nature;

(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

(3) either—

(A) the member has at least 20 years of service computed under section 1208 of this title; or

(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and either—

(i) the member has at least eight years of service computed under section 1208 of this title;

(ii) the disability is the proximate result of performing active duty; or

(iii) the disability was incurred in line of duty in time of war or national emergency."

2. The monthly retired pay of a person entitled thereto under this subtitle is computed according to the following table. For each case covered by a section of this title named in the column headed "For sections", retired pay is computed by taking, in order, the steps prescribed opposite it in columns 1, 2, 3, and 4, . . . However, if a person would otherwise be entitled to retired pay computed under more than one pay formula of this table or of any other provision of law, he is entitled to be paid under the applicable formula that is most favorable to him. Section references below are to sections of this title.

| Formula No. | For sections | Column 1 Take | Column 2 Multiply by | Column 3 Add | Column 4 Subtract |
|---|---|---|---|---|---|
| 1 | 1201 1204 | Monthly basic pay[1] of grade to which member is entitled under section 1372 or to which he was entitled on day before retirement or placement on temporary disability retired list, whichever is higher.[4] | As member elects— (1) 2½% of years of service credited to him under section 1203;[3] or (2) the percentage of disability on date when retired. | | Excess over 75% of pay upon which computation is based. |

ly base pay (15 years × 2½% per year), while the second would result in him receiving "disability pay" equal to 75% of his base pay. (100% disability limited to 75% under Sec. 1401.)

■ In order to determine whether a part or all of the disability pension is community property, we must determine whether the right to receive such payments was created by the labor of the member of the community, i. e., through onerous title, or whether it was created from some other source, i. e., through lucrative title. Property acquired by onerous title is community property and property acquired by lucrative title is separate property. de Funiak & Vaughn, Principles of Community Property, Sec. 62 at 127 (2nd ed.1971). See Jacobson, J., specially concurring opinion in *Flowers v. Flowers*, 118 Ariz. 577, 578 P.2d 1006 (App.1978).

■ As stated in *Van Loan*, supra, the "retirement benefits" received by petitioner are a form of deferred compensation for past services and not gratuities. Because these benefits represent compensation earned during marriage, they are community property. However, in this case, petitioner was in the armed forces at the time of the marriage and it must be determined what portion of these benefits was earned during coverture. Petitioner served in the Air Force for 15 years and three months and was married for 14 years and nine months of that time. Therefore, 96.7% of the "retirement benefits" is community property and respondent/appellee is therefore entitled to 24.2%[3] of the amount received by petitioner from the Air Force each month.

■ The portion of petitioner's pension benefit payment allocable solely to his disability equals 37½% ("disability pay" less

"retirement benefits"). This "disability pay" does not serve as a form of deferred compensation for past services. The amount of the disability payments depends primarily on the existence and extent of the disability. These payments serve to compensate the disabled veteran for the loss of his military pay caused by his early retirement and for his reduced ability to compete for civilian employment. While the marriage community exists, his reduced earning capacity results in a loss to the community. However, at dissolution, the loss to the community ceases and any reduced earning capacity becomes the separate loss of the disabled spouse. We find, therefore, that the entire portion of petitioner's monthly disability pension benefits which are solely attributable to his disability, i. e., 37½%, are his sole and separate property.[4]

The result of the above determinations is that respondent is entitled to 24.2% of the amount received by petitioner from the Air Force as her share of the community and petitioner is entitled to the remaining 75.8% representing his community share plus his separate property share. Under 10 U.S.C., Sec. 1401a, military retirement benefits are adjusted semi-annually on March 1 and September 1 to reflect the latest Consumer Price Index as published by the Bureau of Labor Statistics. For this reason, the amount due respondent must be expressed as a percent and not as a monetary figure. Petitioner must determine the new amount due respondent each time his military disability benefit changes, and remit that amount to respondent.

Because of our resolution of the character of the disability benefits received by petitioner, we need not address his contention that it was error for the trial court to use the standard mortality tables in this case

---

3. Petitioners total monthly benefits are 75% of his base pay and one-half of that (37½%) is attributable to "retirement benefits." He served in the Air Force 183 months and was married for 177 of those months.

$$\frac{177}{183} = 96.7\% \times 50\% \div \frac{1}{2} = 24.2\% \text{ (rounded from 24.175)}$$

4. See: *In re Marriage of Stenquist,* 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978), where the veteran could have received a pension of 65% based on length of service and one of 75% based on disability. The court found the 10% difference to be his separate property and divided the 65% as community property based on the length of the marriage.

where petitioner is suffering from multiple sclerosis. We avoid the need to determine the present value of petitioner's benefits by providing that respondent receive her community portion each month. At the death of petitioner, all benefits will cease for both parties.

■ We must also reverse the trial court's awarding of the joint tenancy residence to respondent inasmuch as that award was but a part of the overall division of community property based on a present value determination of petitioner's benefits. There are no minor children involved in this case and there is therefore no compelling requirement to maintain a family home. The residence should therefore be sold and the net equity realized after all sales expenses divided equally between the parties.

■ Petitioner's third argument is that the trial court improperly ordered him to pay $1,700.00 in community debts in lieu of an award of attorney's fees to respondent. It is well settled that the awarding of attorney's fees in a dissolution action is within the sound discretion of the trial court. *Scott v. Scott*, 121 Ariz. 492, 591 P.2d 980 (1979); *Spector v. Spector*, 94 Ariz. 175, 382 P.2d 659 (1963); *Nelson v. Nelson*, 114 Ariz. 369, 560 P.2d 1276 (App.1977). In addition, so long as the trial court acts equitably, it is allowed great discretion in the allocation of community debts. *Neal v. Neal*, 116 Ariz. 590, 570 P.2d 758 (1977). Here we find no abuse of discretion and affirm the trial court's judgment regarding community debts and attorney's fees.

The final issue raised by petitioner is the inclusion of the following paragraphs in the decree of dissolution:

"9. That Petitioner/Husband shall make arrangements and see to it that the Respondent/Wife received the $600.00 per month portion of disability benefits awarded to Respondent/Wife pursuant to Item 6 above, and that Petitioner shall see to it that these payments are mailed to Wife at her residence commencing with the month of February, 1979.

10. That both Petitioner/Husband and Respondent/Wife are hereby ordered to execute all documents and to do all other things necessary to carry the provisions of this Judgment into effect."

Petitioner maintains that the sole purpose of these paragraphs is to provide grounds for holding him in contempt of court if he fails in the future to make the monthly property settlement payment to respondent. He correctly argues that *Proffit v. Proffit*, 105 Ariz. 222, 462 P.2d 391 (1969), precludes the use of the contempt power of the court to enforce the payment of money as part of a property settlement.

■ We believe that the wording of paragraph 9 could furnish the basis for a contempt action which *Proffit* prohibits. Indeed, we note from the record that respondent used this paragraph as a basis for contempt proceedings. Unlike payments for child support or spousal maintenance, or an order to transfer a property res, all of which can be enforced by contempt proceedings, monetary property settlement payments can only be enforced by respondent bringing a deficiency action and obtaining a judgment upon which she can execute.

Paragraph 10 would be applicable if there were a need for property deeds to be executed or a requirement to transfer title to specific property, i. e., the res itself. However, in the present case there is no requirement for the parties to execute documents in order to divide the community property. The paragraph therefore appears to be surplusage.

■ We believe therefore that on remand the trial court should recast these paragraphs so as to discourage future actions for contempt and to direct the parties to take only those actions necessary to divide the community property.

Reversed in part, affirmed in part and remanded with instructions.

RICHMOND, C. J., and HOWARD, J., concur.