657 P.2d 889

Gloria VILLASENOR,
Petitioner/Appellee,

v.

Hector M. VILLASENOR,
Respondent/Appellant.

No. 2 CA–CIV 4119.

Court of Appeals of Arizona,
Division 2.

July 22, 1982.

Rehearing Denied Oct. 6, 1982.

Review Denied Nov. 16, 1982.

Southern Arizona Legal Aid, Inc., by Joyce Edline Holsey, Tucson, for petitioner/appellee.

Whitehill, Karp & West, P.C., by Annette M. Everlove, Tucson, for respondent/appellant.

## OPINION

BIRDSALL, Judge.

The question raised in this appeal is whether post-dissolution benefits from a federal Civil Service disability retirement annuity, payable under 5 U.S.C. § 8337, are subject to distribution as community property in a marriage dissolution. The court below concluded that the appellee had a community interest in the appellant's annuity, and ordered that she receive $204.70 per month from his $538.00 monthly benefits.[1]

### Federal Preemption

Relying upon *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) and *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the appellant first asserts that the

1. Using a formula similar to the one mentioned in *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977), the court found the appellee's interest to be less than 50%. We note that $538.00 is not the gross monthly annuity, but rather a net figure after deduction of health and life insurance premiums. Since this apparent error has not been raised, we cannot consider it.

federal legislation under which his benefits are paid has preempted state community property law, thus making the benefits his sole and separate property. In *Hisquierdo* and *McCarty,* the court established a two-pronged test for determining whether federal legislation granting employee benefits preempts state family or family-property law. Preemption will be found only where:

1) the local law property right asserted conflicts with the express terms of federal law, and

2) the consequences of recognizing the local right will injure the objectives of the federal program sufficiently to require non-recognition. *Hisquierdo,* 439 U.S. at 583, 99 S.Ct. at 809, 59 L.Ed.2d at 12; *McCarty,* 453 U.S. at 220–21, 101 S.Ct. at 2735, 69 L.Ed.2d at 598.

■ Here we need not undertake the highly subjective inquiry demanded by the second prong of that test, because the right asserted by the appellee does not conflict with the express terms of relevant federal law. The benefits involved in this case are payable under Subchapter III, Chapter 83 of Title 5 U.S.C. A provision of that subchapter, 5 U.S.C. § 8345(j)(1), provides:

> "Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person."

This particular provision was singled out by the Supreme Court in *McCarty* as an example of legislation intended to accommodate the recognition of local property rights in

federal retirement benefits. 101 S.Ct. at 2740, 69 L.Ed.2d at 604–605. Although the appellee has perhaps too candidly labelled the Court's discussion of the legislation "dictum," it actually appears to form an important part of the *ratio decidendi* of *McCarty,* since Congress' failure to enact similar legislation pertaining to military retirement benefits was one of several grounds for the holding that military retirement statutes had preempted state community property law. Id. We are therefore convinced that the separate or community nature of the appellant's benefits is for the law of this state to determine.

### *"Deferred Compensation" vs. "Wage Substitute"*

The appellant contends that his disability retirement benefits are a substitute for future wages and that his post-dissolution benefits, like post-dissolution wages, must therefore be regarded as his sole and separate property. *See In re Marriage of Kosko,* 125 Ariz. 517, 611 P.2d 104 (App.1980); *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (1965). The appellee, on the other hand, contends that the benefits are a form of deferred compensation for past services, and must therefore be treated as community property. *See Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977), *Kosko, supra.*[2] Resolution of this dispute requires examination of the statutory scheme under which the benefits are paid. So much as possible in our analysis, we shall adopt the terminology of *Luna v. Luna,* 125 Ariz. 120, 608 P.2d 57 (App.1979), referring to benefits intended as a substitute for future wages or as compensation for pain and suffering as "disability benefits" and benefits representing deferred compensation as "retirement benefits." Use of this terminology at least highlights the problem in determining the nature of what Congress has designated "disability retirement."

**2.** The appellee also cites *Flowers v. Flowers,* 118 Ariz. 577, 578 P.2d 1006 (App.1978), in which Division One of this court held Civil Service disability retirement benefits to be community property. The rationale for that

decision, however, is no longer sound in light of *Jurek v. Jurek,* 124 Ariz. 596, 606 P.2d 812 (1980). *See Also Rickman v. Rickman,* 124 Ariz. 507, 605 P.2d 909 (App.1980).

A federal Civil Service employee who becomes disabled may be eligible for benefits under either of two plans created by the Civil Service Code, Title 5 U.S.C. Because payments under either plan may be triggered by disability, it would be simple, but not necessarily precise, to call benefits under either plan "disability benefits." The opinion in *Kosko, supra,* for instance, refers to the husband's benefits in that case as "disability benefits," but does not clearly indicate which federal plan was involved there, apparently leaving that determination to the trial court on remand.

The relevant portions of the Civil Service Code are Chapters 81 (5 U.S.C. § 8101 et seq.) and 83 (5 U.S.C. § 8301 et seq.). An employee who is disabled in the performance of Civil Service duties generally qualifies for benefits under Chapter 81. Payments under this chapter are referred to in the statutes as "compensation." *See,* e.g., §§ 8102(a), 8105, 8106. The amount of compensation is determined by reference to the nature and degree of disability, the duration of disability, and the employee's wage-earning capacity while disabled. Payments are made from an Employee's Compensation Fund appropriated by Congress, as provided in § 8147. From the nature of this plan, it appears that payments under Chapter 81 are primarily intended to compensate for injuries to personal well-being and to substitute for future wages, so that those payments would properly be called "disability benefits."

Chapter 81, however, is not involved in this case. The appellant was not disabled in the performance of his Civil Service duties and did not qualify for benefits under that chapter. Instead, he receives an annuity authorized by Chapter 83, entitled "Retirement." An employee may qualify for an annuity under that chapter in any of several ways. One who is 55 years old and

has served for 30 years, or who is 60 years old and has served for 20 years, may voluntarily retire and immediately begin receiving an annuity. § 8336(a), (b). An employee who is 50 years old and has served for 20 years, or who has served for 25 years regardless of age, also qualifies for immediate receipt of an annuity following an involuntary separation from service (except by removal for cause on charges of misconduct or delinquency) or a voluntary separation under conditions determined by the Office of Personnel Management. § 8336(d). These forms of retirement are all designated "immediate retirement." An employee who is separated after completing five years of civilian[3] service also qualifies for an annuity, but payments do not begin until the employee is 62 years old. § 8338. This form of retirement is designated "deferred retirement." An employee with at least 5 years of civilian service who becomes disabled is eligible for "disability retirement," with benefits payable immediately, under § 8337.

Annuities for immediate, deferred, and disability retirement are all paid from the same fund, consisting primarily of contributions deducted from employees' pay, as provided in § 8334. The annuity amounts for all three forms of retirement are calculated by use of the same basic formula, based upon the employee's "average pay" (average annual pay for the three highest-earning years) and years of service. § 8339. The basic formula prescribed in § 8339(a) provides for an annuity of 1.5% of average pay for each of the first 5 years of service, 1.75% for each of the next five years, and 2% for each additional year. All three forms also provide for an annuity to be paid to survivors of the employee. § 8341.

From this much of the analysis, it is easy to see why the court below concluded that the appellant's annuity was *deferred com-*

---

**3.** In other instances, employees are given credit for time in military service for which they are not receiving military retirement benefits. § 8332(c). The record indicates that the appellant received such credit, and that the court actually used the *Van Loan* formula to isolate for distribution only the portion of the appel-

lant's benefits not attributable to military service, perhaps on the basis of *McCarty,* rather than to determine the amounts earned before and during marriage. There being no cross-appeal by the appellee, we do not decide whether that was necessary.

pensation for past labor. It would certainly appear that the annuity is earned during years of service like any other retirement pension, and that disability is merely one of several conditions causing rights in the plan to "vest." Closer examination reveals, however, that the disability retirement annuity, like the military disability retirement pension of the husband in *Luna v. Luna, supra,* has both a "retirement" component and a "disability" component. Separation of the two components, however, is slightly more difficult than it was in *Luna.*

For an employee retiring under the disability retirement provisions of § 8337, the formula of § 8339(a) is applied differently from the way it is applied to others. Under § 8339(g), the basic disability retirement annuity is at least the smaller of: [4]

1) 40% of average pay (which is the equivalent of 21.9 years of service under the § 8339(a) formula) or

2) the amount calculated under the § 8339(a) formula, computed as though the employee had served until age 60.

In most cases, this means that the amount of a disability retirement annuity is less than the same employee would receive if eligible for immediate retirement, but exceeds the amount that would be payable under deferred retirement. The important difference here is that which exists between the deferred and disability retirement.

In effect, § 8339(g)(1) grants unearned service credit to employees who commenced their civil service employment at a younger age, i.e., those who began service before reaching 38.1 years of age, as though they had served for 21.9 years. On the other hand, § 8339(g)(2) grants unearned credit to those employees who commenced their employment at an older age as they had served until age 60. This unearned portion of the annuity, we believe, represents the "disability benefit" component. Perhaps on the theory that an employee with more years of actual service has fewer future earning years for which substitute wages should be paid, and perhaps because the

disability annuitant can return to service upon recovery and qualify for immediate retirement, the "disability" component becomes proportionately smaller as the years of past actual service increase. It disappears altogether for those who "fall through the cracks" by, for example, having served more than 21.9 years but being too young to take immediate retirement, or being over 60 years but having too few years of service to take immediate retirement.

In this case, the annuity does contain an ascertainable disability component. The appellant had compiled 19.2 years of actual service when he retired in September, 1980. Under the formula of § 8339(a), his annuity, based upon those years of actual service, would have been 34.65% of average pay $[(.015 \times 5) + (.0175 \times 5) + (.02 \times 9.2) = .3465]$. His basic annuity, however, is 40% of average pay because of § 8339(g)(1). It can therefore be seen that roughly 86.6% of his annuity has been earned by his years of service $(.3465/.4 = .86625)$. The remaining 13.4% is a "disability benefit" resulting from the unearned service credit granted by § 8339(g)(1).

For reasons noted earlier and not challenged here, the court below concluded that it could distribute only the benefits attributable to the last 14.61 years of the appellant's service, or $409.40 per month. We conclude that only 86.6% of that amount ($354.54) is actually a "retirement benefit" representing deferred compensation divisible between the parties. The appellee's community interest is therefore $177.27 from each monthly annuity payment, rather than $204.70. The judgment is accordingly modified and, as modified, affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.

---

**4.** We believe the provision "at least the smaller of" rather than just saying "the smaller of" is to accommodate future cost of living or other adjustments.