815 P.2d 1094

**Annie C. DESFOSSES, aka Huey Ching Chang Desfosses, Plaintiff–Respondent–Cross Appellant,**

v.

**Paul James DESFOSSES, Defendant–Appellant–Cross Respondent.**

**No. 17837.**

Court of Appeals of Idaho.

Aug. 30, 1991.

Rehearing Denied Aug. 30, 1991.

Paul J. Desfosses, pro se.

Dalon Esplin, Blackfoot, for plaintiff-respondent cross appellant.

## SUBSTITUTE OPINION ON DENIAL OF PETITION FOR REHEARING

The Court's prior opinion dated April 15, 1991, is hereby withdrawn.

PER CURIAM.

This is a divorce action between Annie Desfosses and Paul James (Jim) Desfosses, who were married in 1975. The couple had one son. The parties separated in May, 1979, when Annie moved out with the child. Since that time, the parties have been battling each other out of court, and in court, through countless motions, hearings and a trial held in separate parts. They have been represented by no fewer than eight attorneys in these proceedings. Both parties are appealing orders entered in the magistrate division or in the district court relating to the division of personal proper-

ty, post-separation earnings and retirement benefits.

A decree of divorce, dissolving the marriage of the parties, but not adjudicating the property division, was entered as of February 1, 1981. On August 7, 1984, trial began on the property division; but the parties stipulated, with court approval, that the issue of Jim's retirement would be reserved until the parties had an opportunity to research this issue. In November, 1985, and again in June, 1986, the court heard evidence on the retirement. A decree was entered July 6, 1987, incorporating the magistrate's findings and conclusions, dated February 20, 1987, and his supplemental order and opinion dated June 18, 1987. An amended, corrected decree was entered July 14, 1987. Both parties appealed these orders of the magistrate to the district court. The order on appeal, dated October 15, 1988, affirmed in part, reversed in part and remanded to the magistrate for entry of an amended order.

■ It is the order of the district court, sitting in its appellate capacity, which is the subject of this appeal. We are guided by the standard of review requiring that we review the trial court record with due regard for, but independently from, the district court's decision. *Robinson v. Joint School District No. 331*, 105 Idaho 487, 670 P.2d 894 (1983). If findings of fact are supported by substantial and competent, although conflicting, evidence, those findings will not be disturbed on appeal. *Pierson v. Jones*, 102 Idaho 82, 625 P.2d 1085 (1981). If the law has been properly applied to those facts found, the judgment will be affirmed, and upheld on further appeal. *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988).

■ Jim Desfosses begins by claiming that the magistrate erred in reopening the case after the matter had been settled by agreement of the parties early in 1985.

Upon review of the record, it appears that Jim was intent on pursuing a settlement before the issue of the retirement was tried, but there is no evidence of any agreement. Moreover, this particular issue is raised for the first time in this appeal. In appealing from the magistrate division to the district court, Jim argued that the magistrate "erred in reopening these proceedings for division of property, after the same had been finalized and the property was divided in kind by the parties on February 1, 1981." The district court explained why this alleged error did not have merit. Rather than pursuing that ruling in this appeal, Jim has presented a new issue, based on different factual contentions which purport to show that a settlement was reached in 1985, not 1981. "It is well settled that when a second appeal is taken, the appellants may not raise issues in the higher court different from those presented in the intermediate court." *Centers v. Yehezkely*, 109 Idaho 216, 217, 706 P.2d 105, 106 (Ct.App.1985).

Jim also raises numerous claims of error dealing primarily with the division of property in the divorce. Annie Desfosses cross-appeals, also challenging the magistrate's distribution of the parties' assets, and other issues which we will discuss in turn.

## Property Division

In his next two claims of error, Jim contends that the magistrate erred in awarding Annie her separate property. The magistrate concluded that the property items listed in Annie's exhibits five and six were her separate property.[1] The court also concluded, without making a finding as to its value, that certain jewelry brought into court by Annie was her separate property. Jim argues that these awards to Annie should be reversed because Annie's testimony regarding value was perjured.

■ The trial court heard extensive testimony from each of the parties and received

1. The descriptions of items of property, along with their values, copied from Annie's exhibits five and six were made a part of the July 6, 1987, decree. It should be noted that what the court referred to as exhibit two was actually exhibit five detailing the fire loss claim. Because of the unclear handwriting of the clerk, the number five was made to look like a number two. The itemization which the court made in its decree was derived from plaintiff's exhibits five and six.

into evidence numerous exhibits in the form of lists of property and jewelry. The lists were not easily reconciled, and the values on Jim's lists differed greatly among themselves and from the values on Annie's lists. Annie brought all of her jewelry with her to court, and she was questioned as to when and from whom she acquired each piece. The court awarded all of this jewelry to Annie as her separate property. As to any other investment jewelry—which Jim claimed the parties owned and Annie had in her possession—the magistrate believed, if such jewelry existed, that it was in Jim's possession. When there is conflicting evidence, it is well established that the trial court judge is the arbiter of the evidence, and of the credibility and weight to be given the evidence. *In re Evangelical Lutheran Good Samaritan Society v. Board of Equalization of Latah County*, 119 Idaho 126, 804 P.2d 299 (1990). The magistrate accepted Annie's values, and we are persuaded that the award was based on substantial, though disputed evidence. We need not address the issue of perjury as this error was not properly preserved for appeal and is therefore beyond the scope of our review. *Fairchild v. Fairchild*, 106 Idaho 147, 676 P.2d 722 (Ct.App.1984).

If Jim's objection is to the findings of fact and conclusions of law entered by the magistrate, we have not been provided with a record sufficient for us to review this issue. "If no more specific findings are requested no reversible error is presented. [Citations omitted.]" *Evans v. Evans*, 92 Idaho 911, 920, 453 P.2d 560, 569 (1969). Furthermore, the burden of establishing a record and presenting it on appeal falls to the appellant. *State v. Murinko*, 108 Idaho 872, 702 P.2d 910 (Ct.App.1985). We will not presume error, and, therefore, we uphold the magistrate's award of the jewelry, without assigned values, to Annie as her separate property.

## Proceeds of Fire Insurance

After the decree terminating the marriage of Annie and Jim, but before the trial on the property issues, a fire damaged Jim's home. At the time of the fire in 1982, community assets were in the house, as well as some items of separate property acquired by Annie before the marriage, and Jim's separate property. The fire insurance proceeds, however, were insufficient to cover the value of the parties' personal property lost or damaged in the fire.

The magistrate awarded fifty percent of the fire insurance proceeds to each of the parties, conceding that "[f]rom the testimony, the court has been unable to discern any division of such properties to which the funds might be allocated." He further concluded that "this [award] will offset the loss of any property claimed by [Annie] to be held by defendant [Jim], which was included in the damage claim." The rationale of the magistrate was to provide for either the return of Annie's separate property to her or to have the value of her property reimbursed by the insurance proceeds.

Jim argues first that the fire insurance policy, purchased by him after the divorce, and the proceeds paid to him after the fire, were his separate property. Jim contends that the magistrate erred in awarding one-half of the fire insurance proceeds to Annie. Jim also raises as an issue the magistrate's failure to make findings ascribing a value to the community property and to the separate property before dividing the proceeds of insurance between the parties. We will treat Jim's two claims as a single issue for reasons which become apparent below.

On appeal, we review the record for support of the magistrate's finding that the loss was an equal loss. If the finding of fact is supported by substantial and competent evidence, we will uphold those findings on appeal. *Shurtliff v. Shurtliff*, 112 Idaho 1031, 739 P.2d 330 (1987).

There is little testimony that is helpful in characterizing or valuing the property of the parties. The exhibits, relied upon by the magistrate, are numerous and reflect the disputed itemization and valuation of the parties. Exhibit five was introduced at trial by Annie as the fire loss claim, which itemization had been prepared by Jim, and

totalled $34,089. On that exhibit, Annie had marked in red ink a "C" indicating items of community property whose value totalled $3,083. The magistrate apparently accepted these values as reflected on exhibit five. The magistrate also accepted the values listed on exhibit six, which was held to be a list of Annie's separate property totalling $9,796. Further, the magistrate held that the separate property items on exhibit six were in Jim's possession at the time of the fire, and that Annie could recover their value from the insurance proceeds.

The total loss from the fire, therefore, was $34,089, of which $11,337.50 (or thirty-three percent of the loss) represented Annie's separate property and her one-half of the community property destroyed in the fire. Jim's loss is easily computed to be $22,751.50 (or sixty-seven percent of the loss), which is his one-half of the community assets and his separate property. "The proceeds of a fire insurance policy have the status of the property insured. Proceeds of fire insurance on community property belong to the community, and conversely, the proceeds of insurance on separate property of one spouse are separate property of that spouse, even though the premiums have been paid from the separate property of the other spouse." 41 C.J.S. *Husband and Wife* § 471(4) (1944). If there had been enough insurance proceeds to cover the entire loss, each of the parties would have been fully compensated for his/her separate property and his/her share of the community property.

Where the proceeds of $25,000 are insufficient in this case to reimburse the loss, it is necessary to prorate the recovery between Annie and Jim according to their respective shares of the property. We hold that there is not substantial evidence in the record that Annie's loss was one-half of the total loss. We reverse the finding of the magistrate. Because there is evidence to support a division of the proceeds of the fire insurance as follows:

Annie's pro rata share ... 33% × $25,000 = $8,250

Jim's pro rata share..... 67% × $25,000 = $16,750

we remand for entry of a modified award in accordance with this opinion.

### Retirement Benefits

Both Jim and Annie have raised issues in this appeal concerning the award to Annie of part of Jim's retirement benefits. Jim contends that the district court erred in overturning the magistrate's award and in remanding the case back to the magistrate for modification of the amount fixed by the magistrate. In her cross-appeal, Annie also contends that the district court erred. She argues that she should have been awarded a larger amount based on actual disability retirement payments which Jim began receiving after the date of the divorce but before the trial of this issue. Accordingly, we must review the respective rulings of both courts on this issue.

■ Retirement plans are valued, as are other community assets, as of the date of divorce. *Shill v. Shill (Shill II)*, 115 Idaho 115, 765 P.2d 140 (1988). The community of the Desfosses was terminated by the decree of divorce, which was entered as of February 1, 1981. On that date, Jim continued to be employed by the Internal Revenue Service. Because he had at least five years of service on February 1, 1981, he then had a vested right to receive retirement, at age, sixty-two. 5 U.S.C. § 8338.[2]

The magistrate decreed that Annie was entitled to one-half of that portion of the retirement benefits accrued during the parties' marriage. In order to value the benefits, the magistrate required proof of the monthly annuity amount that Jim would have been entitled to receive at age sixty-two, had he stopped working on the date of the divorce, February 1, 1981. The magistrate called this the hypothetical deferred retirement, but actually awarded Annie ap-

---

**2.** 5 U.S.C. § 8338 reads as follows:
(a) An employee who is separated from the service or transferred to a position in which he does not continue subject to this subchapter after completing 5 years of civilian service is entitled to an annuity beginning at the age of 62 years.

proximately one-half of the cash value of Jim's contributions to the plan during the marriage.[3] On appeal, the district court held that while the magistrate had correctly calculated the *percentage* of Annie's community property interest in Jim's retirement, the magistrate had erroneously accepted Jim's figure of $16,670.10 as the value of the retirement as of February 1, 1981, the date of the divorce.

We agree with the district court. The magistrate should have applied the percentage to the value (as of February 1, 1981) of the "hypothetical deferred retirement" which Jim would be entitled to receive when he reached the retirement age of sixty-two. The affidavit of plaintiff's expert was the only computation in the record which purported to follow the correct formula for calculating Annie's interest in the retirement under *Shill II*. Accordingly, the district court directed the magistrate on remand to revise the decree using those figures. Based on the record before the district court on appeal, we hold that the district court did not err in remanding the retirement issue to the magistrate court for recalculation.

While we affirm the district court's appellate decision to remand the case to the magistrate division for recalculation of Annie's interest in the retirement, we do not decide whether the district court was correct in directing the magistrate to use specific figures supplied by the district court. Our reasons for avoiding this question are as follows.

Jim filed his appeal from the district court's appellate decision on November 10, 1988. On November 15, by remittitur, the district court directed the magistrate to comply with the appellate decision and enter an amended judgment. On November 30, 1988, the magistrate entered the amended judgment as directed. In the meantime, Annie filed her cross-appeal from the district court's decision.

Subsequent events in the magistrate division and the district court have resulted in a second appeal by both parties, while the present appeal was pending. The new appeal, Supreme Court No. 18692, also assigned to this Court, is at issue and has been set for oral argument in April, 1991. We take judicial notice of the record of appeal in No. 18692, which discloses that after the magistrate entered the amended judgment on November 30, 1988, Annie filed an I.R.C.P. 60(b) motion to correct the amended judgment. This motion was based on a new affidavit by her expert witness, disclosing that a substantial error had been made by the expert in calculating the 1981 value of Jim's retirement, resulting in *overstating* the value of the retirement by several thousand dollars. After a hearing, the magistrate granted Annie's motion and entered a "Corrected, Amended And Consolidated Judgment" on October 25, 1989, which reduced the previous award to Annie by several thousand dollars. As a consequence, the previous award of prejudgment interest to Annie on her share of retirement benefits was also drastically reduced. Neither party has challenged the corrected judgment of October 25, 1989, in appeal No. 18692 in respect to these awards. Accordingly, it appears that any issue in the present appeal concerning whether the district court erred in fixing the amount of Annie's share in the retirement and the amount of prejudgment interest thereon is moot. Therefore, we will not discuss these issues.

### Cross–Appeal

Because the rulings on the retirement benefits constitute part of Annie's assign-

---

**3.** It appears from the record that the magistrate was aware of the correct way to value a spouse's share of retirement benefits which become payable years after the divorce. It is also apparent that the magistrate was frustrated by repeated delays in obtaining pertinent information from Jim's employer necessary to make such calculations. However, it is not apparent why the magistrate settled on awarding Annie only half of the community contributions to the retire-

ment fund, disregarding the fact that government contributions added to the value of the retirement benefits vested but not payable at the time of divorce. Ironically, because of circumstances following the remand to the magistrate, namely, the need to make further corrections in the amount of the retirement award, the magistrate's first determination may prove to be substantially correct after all.

ments of error, we will consider the issues raised in her cross-appeal at this time. Annie first argues that the magistrate erred in awarding her one-half of the *deferred* retirement benefits. She insists that Jim's *actual* disability retirement payments, which began in May, 1984, constitute the proper community property interest in the retirement fund. That portion of the actual disability retirement attributable to the time the parties were married, divided in half, is the correct value of Annie's share in the retirement, she argues.

■ Disability retirement under 5 U.S.C. § 8337, in most cases, exceeds the amount that would be payable under deferred retirement, which is governed by 5 U.S.C. § 8338. *See Villasenor v. Villasenor*, 134 Ariz. 476, 657 P.2d 889 (App.1982). The calculations in Jim's case bear that out, and Annie is asserting her claim against the larger disability retirement amount. However, the result urged by Annie is that which was reversed by our Supreme Court in *Shill II*, 115 Idaho 115, 765 P.2d 140 (1988). In *Shill II*, the value at the time of actual retirement, which was awarded by the trial court, included increases in pension benefits accruing after the date of divorce. "As such, those increases constituted the separate property of the appellant, and to the extent that an interest in those post-divorce increases was awarded to respondent, it constituted an impermissible invasion of appellant's separate property." *Id.* at 118, 765 P.2d at 143. This ruling is applicable here. Jim did not become disabled until after the divorce. It is immaterial that in 1984, Jim applied for, and received, a disability retirement under the provisions of 5 U.S.C. § 8337, computed under 5 U.S.C. § 8339(g), because this event postdates the decree of divorce. Any increase in the disability retirement payments compared to the deferred retirement payments for which Jim would have been eligible on February 1, 1981, was Jim's separate property. We agree with the magistrate's ruling that Jim's entitlement to the disability retirement benefits arose only after the date of the divorce and, therefore, were not community assets to be divided. Because the district court's appel-

late decision was also correct on this issue, we affirm the district court's ruling.

■ Annie next contends, because Jim had testified that he would always be disabled, that the court should award a percentage of each of his disability retirement payments as they are received, rather than a lump sum payment. Again, we state that the deferred retirement for which Jim was eligible on February 1, 1981, had he elected to retire on that date, was the correct valuation of the retirement in this case, and not the actual disability retirement, which Jim began receiving in May, 1984. In light of the protracted litigation we have seen in this case and the difficulties the parties have had all along in dealing with each other, a lump sum award is the most viable. A lump sum settlement is also in keeping with the concept that, in Idaho, "upon dissolution of a community upon divorce each spouse should have immediate control of his or her share of the community property, or at least within a reasonable time." *Ramsey v. Ramsey*, 96 Idaho 672, 679, 535 P.2d 53, 60 (1975), *citing Largilliere v. Largilliere*, 50 Idaho 496, 298 P. 362 (1931); *Larson v. Larson*, 95 Idaho 376, 509 P.2d 1297 (1973), *overruled on other grounds*, 103 Idaho 85, 645 P.2d 319 (1983).

### Post–Separation Earnings

■ The next issue raised in the cross-appeal is whether the magistrate erred in not awarding to Annie one-half of Jim's earnings from the period between the separation date and the date of divorce. Idaho Code § 32–906(1) defines as community property all property acquired after marriage by either husband or wife which is not separate property as specified in I.C. § 32–903. Clearly, from a reading of these statutes, the earnings of the husband following separation and up to the date of divorce must be included as community property. *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976).

There was no finding by the magistrate as to the disposition of the community earnings derived from that period of time between the date of separation, May 8,

1979, and the date of divorce, February 1, 1981. Jim testified that he had prepared the parties' 1979 income tax returns as married, filing separately and that the parties had agreed to split their income for tax reporting purposes. Annie testified that she did not file a return in 1979, but, because she began working as of January, 1980, she did file returns in 1980 and 1981. The documentary evidence admitted as plaintiff's (Annie's) trial exhibits indicates that in 1980, Annie filed as head of household, claiming herself, her son, Michael, and her mother. Also admitted as plaintiff's exhibits were Jim's payroll comprehensive summary for pay period ending December 12, 1981, and year-to-date earnings for pay periods ending December 11, 1982 and ending December 24, 1983. Although these earnings statements were offered with regard to the retirement benefit issue, and no statements of Jim's 1979 or 1980 income were presented to the court, the magistrate could have extrapolated the community income earned between the date of separation and the date of the divorce decree. *See, e.g., Houska v. Houska,* 97 Idaho 316, 543 P.2d 869 (1975).

The record reveals that Jim had been paying child support to Annie after separation and before the date of the divorce decree, and that he had paid debts incurred by the community, which debts, according to Jim's testimony, totalled $7,493.66. That Jim did pay some community debts incurred during that time was not disputed, although there was conflicting evidence of the total. In the proposed findings of fact and conclusions of law submitted to the trial court by Annie, Annie suggested how the magistrate could determine that Annie was entitled to a greater share of that community income than she in fact received. The magistrate did make a finding allocating all of the community debt to Jim, "based upon his legal obligation as well as his sources of income and ability to pay," but he apparently overlooked entering a finding as to the post-separation earnings.

While it is reasonable that the magistrate may have intended to divide the community earnings by attributing all of the community debt to Jim, he did not state so and made no specific finding as to the division of the post-separation community earnings. For us to derive such intent from the record before us would be speculation. We are thus compelled to remand this issue to the district court for findings establishing the amount of community income earned between the date of separation and the date of divorce and the division thereof. In resolving this question, the court on remand should rule on whether or not the parties had made an agreement in 1979 to treat income earned during such period as separate property, and if not, whether the parties received substantially equal benefit from such earned income, or whether one party retained a disproportionate share of this community asset.

## Post–Judgment Interest

Annie further alleges in her cross-appeal that the district court was in error when it reversed the magistrate's award of post-judgment interest at the rate of eighteen percent and applied the variable rate interest to the judgment in this case. The judgment was entered July 6, 1987, five days after the effective date of the amendment to I.C. § 28–22–104.

The question of the applicable interest rate on a judgment dated July 6, 1987, is one of statutory interpretation, which has been addressed by our Supreme Court in *George W. Watkins Family v. Messenger,* 118 Idaho 537, 797 P.2d 1385 (1990). In this opinion, which was not available at the time the briefs in this case were prepared, the Court adhered to the literal language of I.C. § 28–22–104. The Court held that, where the cause of action accrued prior to July 1, 1987, the lower post-judgment interest rate provided in the 1987 amendment to I.C. § 28–22–104 was not applicable to the judgment. *Id.* at 540, 797 P.2d at 1388. Because the cause of action in the case at hand accrued well before the effective date of the amendment to the statute, the eighteen percent interest rate, not the lower post-judgment rate, was the proper rate. We hold that the magistrate's award of post-judgment interest at eighteen percent per annum was correct.

### Attorney Fees

Finally, we are asked to resolve an issue of attorney fees. Jim claims as error the magistrate's award of costs and attorney fees to Annie. Jim submits that the attorney fees of both parties should have been assessed against the community property before any division of the community property was made. He contends that it was error for the trial court to assess Annie's "entire attorney fees" against him. He also argues that Annie's and her counsel's conduct throughout this litigation warrant an award of sanctions to him for the sake of equity.

The magistrate ordered Jim to pay both $3,500 as partial attorney fees on Annie's behalf, and $1,029.74 attributable to the fees incurred by Annie's counsel in obtaining the retirement information directly from Jim's employer. The latter figure was derived from two separate memoranda of costs from Annie's counsel prepared pursuant to a minute entry and order of the magistrate dated April 17, 1986. Accordingly, the record conflicts with Jim's claim that he was charged with *all* of Annie's attorney fees and costs. The record also reveals that no proof of conduct warranting sanctions against Annie was presented to the magistrate and no such argument was preserved for appeal. Our discussion therefore will be limited to whether or not the magistrate was empowered to award attorney fees and costs to Annie and against Jim.

■ The awarding of attorney fees and costs in a divorce action is a matter of discretion. I.C. § 32–704; *Martsch v. Martsch,* 103 Idaho 142, 645 P.2d 882 (1982). *See also* I.R.C.P. 54(e)(1). The burden is on the party disputing the award to show an abuse of discretion. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

■ Idaho Code § 32–704(2) provides in part for an award of costs and attorney fees in a divorce action after consideration of the financial resources of both parties. Idaho Code § 32–708 describes what property is liable for such award. In 1980, however, revisions were made to I.C. §§ 32–704 and –708 eliminating the requirement that attorney fees awarded in a divorce action be first paid out of community assets, prior to any division of those assets. *See also Beesley v. Beesley,* 114 Idaho 536, 542, n. 7, 758 P.2d 695, 701, n. 7 (1988). The authority cited by Jim in support of satisfying any attorney fee award in the divorce from the community assets is no longer an accurate statement of the law. We hold that the magistrate acted within his discretion in awarding attorney fees to Annie, and we find no error in the award itself or the magistrate's reasons for making the award. As to Jim's argument seeking an award of attorney fees for equity's sake, we find his argument to have no merit.

As previously noted, Jim's claim of error recites that the court improperly ordered him to pay *all* of Annie's attorney fees. Jim's claim of error does not independently state as an issue the award of attorney fees made to Annie by the district court in the interim appeal. Rule 35(a)(4), I.A.R., prescribes that appellant's brief must contain a short, concise statement of the issues presented for review. The failure to include an issue pursuant to this rule will preclude review by the appellate court. *State v. Prestwich,* 116 Idaho 959, 783 P.2d 298 (1989). However, the rule does allow for review of every subsidiary issue fairly comprised in the statement of the issues presented. I.A.R. 35(a)(4). In order to give meaning to Jim's statement of the issue—"that the Court erred in assessing the entire attorney fees of [Annie] against [Jim]"—we will consider the attorney fees awarded on appeal as part of this issue.

In the appeal below, Annie was awarded attorney fees based on I.C. § 32–704(2), which takes into account the financial situation of each of the parties in a divorce action. Recognizing that an award of fees is discretionary, we require the party challenging the award to show how that discretion was abused. *Anderson v. Ethington, supra.* Because Jim has failed to present any argument or authority concerning the attorney fees on appeal, we will not reverse the award of fees.

Annie has asked for attorney fees on appeal under I.C. § 12–121, contending that Jim's appeal was unreasonable, frivolous and without foundation. Any award of fees under this statute can only be made to a prevailing party. Here, we cannot say that either party has prevailed in this appeal. Accordingly, we do not award either costs or attorney fees.