NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

NORA M. GONZALEZ, *Petitioner/Appellee*,

*v.*

FERNANDO VAZQUEZ ARRELLANO, *Respondent/Appellant*.

No. 1 CA-CV 23-0572 FC
FILED 05-30-2024

Appeal from the Superior Court in Maricopa County
No. FC2022-002329
The Honorable Monica Edelstein, Judge

**VACATED IN PART**

COUNSEL

Michael L. Gertell LLC., Phoenix
By Michael L. Gertell, Esq.
*Counsel for Petitioner/Appellee*

The Valley Law Group, PLLC, Phoenix
By Ryan M. Reppucci
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1        Appellant Fernando Arrellano ("Husband") appeals the superior court's decree of dissolution ("Decree") allocating half of his workers' compensation settlement to Nora Gonzalez ("Wife") as community property. Husband contends that the trial court erred in finding that the proceeds from the workers' compensation settlement awarded to him were community property. For the reasons below, this Court vacates a portion of the Decree, finding error in the superior court's determination that Husband's workers' compensation settlement proceeds were community property.

**FACTS AND PROCEDURAL HISTORY**

¶2        Husband and Wife married on April 3, 1995. In 2018, Husband suffered a workplace injury, prompting him to file a workers' compensation lawsuit. Husband had surgery for his injury and retained counsel. Under a contingency agreement, Husband's legal counsel received a monthly fee deducted from Husband's Social Security Disability payments and was to receive a portion of any eventual award. Despite being entitled to $1,050 in monthly disability following the injury, Husband received a monthly check of $850 directly from his attorney, which was utilized to cover household expenses and bills of the community before separation.

¶3        On April 13, 2022, Wife filed a petition for dissolution seeking a portion of any workers' compensation award. The petition was served on Husband on July 5, 2022. Subsequently, in March 2023, the workers' compensation lawsuit was settled for a lump sum payment of $160,000. The settlement stated that the amount was for future benefits and anticipated future medical expenses. Pursuant to the settlement statement, Husband's legal counsel was entitled to 25% of the settlement, totaling $40,000, in accordance with the fee agreement. The remaining $120,000 was designated for Husband. Wife was not a party to any of the agreements.

¶4 An evidentiary hearing was held on June 22, 2023, and shortly thereafter, the court issued the Decree dissolving the marriage without granting spousal maintenance because Husband lacked financial resources. Within the Decree, the court determined that neither party established any identifiable assets apart from the settlement award stemming from Husband's workers' compensation lawsuit. The superior court deemed the workers' compensation award a community asset and divided it equally.

¶5 The court reasoned that by committing the community through the retainer agreement, which required a portion of Husband's social security funds for payment, Husband effectively established a community debt associated with the lawsuit. Therefore, until the case settled, this "debt" remained a community obligation.

¶6 Furthermore, the court emphasized that the remaining $120,000 of the award, after satisfying the community debt, retained its characterization as a community asset, regardless of when it was acquired after the date of service. Consequently, the court awarded Wife half of the proceeds, deducting $1,000.00 as an equalization for the tax refund.

¶7 Husband moved to alter or amend the judgment, and the court denied the motion. Husband timely appealed and this Court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. § 12-120.21(A)(1), A.R.S. § 12-2101(A).

## DISCUSSION

¶8 Husband argues the trial court erred by not awarding Husband 100% of the workers' compensation settlement proceeds, claiming it is his sole and separate property. Wife contends that Husband obligated the community through the retainer agreement, thereby creating a community debt. "[This Court] appl[ies] an abuse of discretion standard when reviewing the superior court's division of property, but review[s] the court's characterization of property *de novo*." *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014).

### A. The Workers' Compensation Settlement Proceeds Were Separate Property.

¶9 Workers' compensation is granted to an injured employee as a substitute for lost wages, calculated based on the individual's diminished earning capacity throughout the period of disability. *Bugh v. Bugh*, 125 Ariz. 190, 192 (App. 1980). Husband argues that the award was for the future and was not compensation for past earnings.

¶10 "Property that is acquired by a spouse after service of a petition for dissolution" that results in a dissolution is that spouse's separate property. A.R.S. § 25-213(B). But "service of a petition for dissolution of marriage . . . does not . . . [a]lter the status of preexisting community property." A.R.S. § 25-211(B). As a result, payments received post-petition are not necessarily separate property. *DeFrancesco v. DeFrancesco*, 248 Ariz. 23, 24, ¶ 5 (App. 2019).

¶11 Husband cites *In re marriage of Cupp*, 152 Ariz. 161 (App. 1986) to support his argument that the award is his separate property. This Court held in that case that worker's compensation awards, when commuted to a lump-sum payment during the marriage, constitute separate property for the employee spouse to the extent that it represents loss of earning capacity post-divorce. *Cupp*, 152 Ariz. at 163. Importantly though, in *Cupp*, a portion of the lump sum payment was intended to compensate for lost wages during the marriage and was therefore considered community property. *Id.* The remaining portion, allocated for future lost wages beyond the marriage, was regarded as separate property. *Id.*

¶12 Wife argues that Husband's workers' compensation benefits, including the settlement, were community assets to which she was entitled. But Wife does not provide any support for this position, only arguing that a decision to the contrary would result in gamesmanship. Workers' compensation is not assignable. A.R.S. § 23-1068(A); *see also Bugh*, 125 Ariz. at 193 (stating that workers' compensation benefits paid after the dissolution of a marriage for injuries incurred during the marriage are deemed the separate property of the worker after dissolution). For this and other reasons explained herein, Wife's argument fails.

¶13 Here, Husband received the lump sum settlement following the service of dissolution. The calculation of the settlement was forward looking from March 2023 onward; it was not for past wages because the workers' compensation settlement aimed to address Husband's projected lost earnings in the future. Husband had already been compensated for any loss in past wages. For these reasons, the resulting proceeds should have been classified as Husband's sole and separate property.

¶14 Thus, the court's ruling that the proceeds from the workers' compensation settlement were community property was erroneous.

**B.    The Retainer Contract Was Not a Community Debt**

¶15 Wife argues that Husband obligated the community through the retainer agreement by using his disability funds. Under Arizona law,

property acquired during the marriage is typically presumed to be community property, while property acquired after the service of a petition for dissolution is presumed to be separate property. A.R.S. § 25–211(A). But this Court previously rejected the argument that the source of disability benefits establishes its nature:

> Although the entitlement to [government disability] benefit[s] may be attributed to employment and thus have a community origin, the money so expended does not produce a community asset subject to division at dissolution. What it produces is coverage for the individual spouse against the risk of disability and loss of future earning ability. . . . [P]ost-dissolution disability benefits are separate property.

*In re Marriage of Kosko*, 125 Ariz. 517, 518 (App. 1980). And contrary to the superior court's conclusion, Social Security disability payments received by Husband and utilized to retain counsel are Husband's separate property. *See McNeel v. McNeel*, 169 Ariz. 213, 214 (App. 1991) ("Disability benefits are the separate property of the spouse suffering the disability. This rule results from conceptualizing the disabled spouse's body as his or her separate property, brought to the marriage by that spouse." (internal citations omitted)); *Luna v. Luna*, 125 Ariz. 120, 123 (App. 1979) ("[T]he Social Security disability benefits received by petitioner are his separate property and no offsetting award can be made to respondent/appellee.").

¶16        Husband's separate property—his disability payments—were used to pay for the retainer agreement, which did not create a debt to the community. And regardless of how Husband secured his disability settlement, it is personal to him because it results from his own injuries and the payment entirely represents post-dissolution wages and medical expenses.

¶17        Though the superior court cited *In re Marriage of Flower*, 223 Ariz. 531, 537–38, ¶¶ 24–29 (App. 2010), which held unequal division of property was appropriate because the parties incurred substantial community debt to benefit one spouse's separate property, that case is irrelevant here. That case applies only to dividing community assets. As noted, Husband's disability settlement—which is comprised of funds to settle Husband's workers' compensation claim for injuries personal to him and intended to cover medical expenses and lost wages that are entirely prospective, post-dissolution—is Husband's separate property. *See Kosko*, 125 Ariz. at 518. Thus, Husband's disability settlement is not subject to equitable division at all, and *In re Marriage of Flower* is inapposite.

¶18 Wife's contention that Husband obligated the community through the retainer agreement, necessitating a portion of the social security funds, parallels the misconceptions addressed in *Helland*. In *Helland*, the court clarified the nature of a disability policy, emphasizing that while contractual, such policies lack the characteristics of traditional investments due to the contingent nature of disability benefits. 236 Ariz. at 200, ¶ 12. Consequently, the community does not acquire rights to future disability benefit payments upon policy purchase. *Id.*

¶19 Although *Helland* focused on disability policy acquisition, the analysis is consistent with a contract that uses social security disability payments for retaining counsel, as in the present case. Here, Husband secured legal representation for his workers' compensation suit through use of his monthly disability benefits. Wife was neither bound by the contract, which was entered using separate funds, nor did she contribute funds to support the endeavor. Furthermore, no guaranteed return existed, given the ongoing negotiations regarding the workers' compensation claim and Husband's obligation to demonstrate eligibility for payment. Therefore, the court erred by finding that the retainer contract created a community debt thereby creating a community asset from the workers' compensation settlement proceeds.

## CONCLUSION

¶20 The portion of the decree that held Husband's workers' compensation settlement was community property is vacated. Both parties request attorneys' fees and costs under Arizona Rule of Civil Appellate Procedure 21 ("Rule 21") and A.R.S. § 25-324. After considering the financial resources of both parties, the requests for attorneys' fees are denied. A.R.S. § 25-324(A). Pursuant to A.R.S. § 12-341, Husband is awarded his costs following compliance with Rule 21.

