# United States Court of Appeals for the Federal Circuit

06-3138

GINTARAS A. DAMBRAVA,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Gintaras A. Dambrava, of Redmond, Washington, pro se.

Thomas D. Dinackus, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Paul St. Hillaire, Attorney, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3138

GINTARAS A. DAMBRAVA,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  October 20, 2006

_____

Before LOURIE, SCHALL, and GAJARSA, Circuit Judges.

LOURIE, Circuit Judge.

Gintaras Dambrava ("Dambrava") appeals from the final decision of the Merit Systems Protection Board ("the Board") affirming the Office of Personnel Management's ("OPM") reconsideration decision denying his application for immediate retirement under the Civil Service Retirement Act ("CSRA") after concluding that he was not entitled to service credit for time spent on the temporary disability retirement list ("TDRL").  Dambrava v. Office of Pers. Mgmt., DC-0831-04-0817-I-1 (M.S.P.B. Nov. 18, 2005).  Because the Board correctly determined that he was not entitled to service credit, we affirm.

BACKGROUND

On July 5, 1967, Dambrava began active service in the United States Army. On September 18, 1968, he was injured in combat after suffering a gun-shot wound to the right side of his neck. On February 13, 1969, Dambrava was placed on the TDRL, which lists members of the armed forces who would qualify for disability retirement but for the fact that the "disability is not determined to be of a permanent nature and stable." 10 U.S.C. § 1202 (2000). Dambrava remained on the TDRL until he permanently retired on February 1, 1973, when it was determined that he was permanently unfit for duty.

In 1979, Dambrava had entered career employment in the federal government. While employed with his last employer, the United States Marshals Service, Dambrava requested that his employer amend his record of service so as to include time spent on the TDRL. The Marshals Service granted the request, and on May 4, 2003, a Notification of Personnel Action was issued reflecting the change. On November 18, 2003, Dambrava applied for immediate retirement. Dambrava chose January 4, 2004 as his effective retirement date.

By letter dated March 29, 2004, the OPM advised Dambrava that his request for immediate retirement was denied because he did not have thirty years of creditable service by January 3, 2004. Dambrava sought reconsideration of the OPM's initial decision, and reconsideration was denied on August 26, 2004.

Dambrava appealed to the Board. In an initial decision dated December 3, 2004, the Administrative Judge ("AJ") affirmed the OPM's conclusion that Dambrava's time on the TDRL did not qualify as active service and thus could not be included for service

credit under the CSRA. <u>Dambrava v. Office of Pers. Mgmt.</u>, DC-0831-04-0817-I-1 (M.S.P.B. Dec. 3, 2004) at 3 (citing 5 U.S.C. § 8336(a)). Dambrava appealed the AJ's decision to the full Board, which denied his petition for review, thereby rendering the AJ's decision final. <u>See</u> 5 C.F.R. § 1201.115(d) (2006). Dambrava timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); <u>see</u> <u>Briggs v. Merit Sys. Prot. Bd.</u>, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

On appeal, Dambrava argues that he is entitled to civil service retirement credit and annual leave credit for the time spent on the TDRL, <u>i.e.</u>, from February 13, 1969 to January 31, 1973. Dambrava's main contention is that the Board erred by failing to consider the correct statutory provisions, namely, 5 U.S.C. § 8332(c)(2)(A) and 5 U.S.C. § 6303(a). Dambrava contends that under those provisions, TDRL assignment qualifies as creditable service.

The government responds that the Board correctly determined that time spent on the TDRL did not qualify as "active service." The government argues that the Board properly deferred to the Secretary of the Army in determining Dambrava's status in the Army, and that documents in the record support this conclusion. Additionally, the government asserts that the plain language of the governing statutes indicates that

placement on the TDRL fails to qualify as "active service" in the Armed Forces. Lastly, the government contends that other courts have analyzed the status of members while on the TDRL and concluded that it is not "active duty."

We agree with the government that the Board's decision was in accordance with law. In resolving this appeal, we must determine whether the Board erred in concluding that time spent on the TDRL is not "creditable service" under the CSRA. Because this issue is one of statutory interpretation, the Board's decision is reviewed de novo.

To begin our analysis, we must first look to the relevant statutory language. Title 5 of the United States Code § 8332 provides that creditable service "shall be credited from the date of original employment to the date of separation on which title to annuity is based [on] the civilian service of the Government." 5 U.S.C. § 8332(b) (2000). The statute further provides that, with certain exceptions not relevant here, service of employees who began employment prior to October 1, 1982 "shall include credit for each period of military service performed before the date of the separation" of employment. Id. § 8332(c)(1)(A). Notably, the statute defines "military service" as "honorable active service in the armed forces." 5 U.S.C. § 8331(13)(A). Based on those provisions, the statute clearly provides that Dambrava would be entitled to credit for the duration of his TDRL assignment if such time qualifies as "honorable active service." Upon our review of the statutory language and pertinent case law, we conclude that it does not.

Placement on the TDRL is governed by 10 U.S.C. § 1202. That section provides that:

> Upon a determination by the Secretary concerned that a
> member described in section 1201(c) of this title would be

> qualified for retirement under section 1201 of this title but for the fact that his disability is not determined to be of a permanent nature and stable, the Secretary shall, . . . place the member's name on the temporary disability retired list, with retired pay computed under section 1401 of this title.

10 U.S.C. § 1202 (emphases added). That statute requires a member to undergo a physical examination at least once every eighteen months in order to determine "whether there has been a change in the disability for which he was temporarily retired." 10 U.S.C. § 1210. A member may remain on the TDRL for up to five years. 10 U.S.C. § 1210(b). If the member is found to be physically unfit, he then enters permanent retirement status. Notably, however, if he is determined to be physically fit, upon his consent, the statute provides that he shall "be recalled to active duty," on which date his disability retired pay is discontinued. 10 U.S.C. § 1211(a), (d) (emphasis added). Thus, a plain reading of the statutory language indicates that the status of a member on the TDRL is akin to inactive duty or retirement, as opposed to "active service." See Transco Prods. Inc. v. Performance Contracting, Inc., 38 F.3d 551, 556 (Fed. Cir. 1994) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary.").

Our conclusion that TDRL is not active service is consistent with other circuit court decisions that have dealt with this issue in the context of the Federal Tort Claims Act. In Cortez v. United States, 854 F.2d 723 (5th Cir. 1988), a widow of a serviceman who died while on the TDRL brought suit against an army medical center alleging negligence. The Fifth Circuit reversed the lower court's dismissal of the case based on the holding of Feres v. United States, 340 U.S. 135 (1950). In Feres, the Supreme Court had held that "the Government is not liable under the Federal Tort Claims Act for

injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146. The Fifth Circuit concluded that a listing on the TDRL is not "activity incident to service," nor is it equivalent to active duty. Cortez, 854 F.2d at 726. The court noted that a "member who is physically unqualified for further active duty has no inherent or vested right to be continued on active duty." Id. Thus, the court determined that a "service member on the TDRL is separated from the service," and the claim against the hospital was not barred. Id.

The Fourth Circuit, in Bradley v. United States, 161 F.3d 777 (4th Cir. 1998), likewise permitted a negligence claim to be brought against the government when the decedent, a servicewoman in the Navy, died while listed on the TDRL. After noting that a member on the TDRL is, among other things, not on active duty, not subject to being recalled to active duty, and has the option to reenlist if found to be physically fit for duty, the court concluded that status on the TDRL is "not a full discharge." Instead, it is "comparable to permanent retirement status." Bradley, 161 F.3d at 782. While we are not bound by those decisions of sister courts, which pertain to negligence claims rather than entitlement to military retirement, they do characterize TDRL status in a manner that we find persuasive and relevant to our inquiry. TDRL is not active service.

In Craft v. United States, 544 F.2d 468 (Ct. Cl. 1976), the Court of Claims, one of our predecessor courts whose precedents do bind us on similar facts, evaluated the status of a member on the TDRL. The court noted that a member on the TDRL "is actually separated from the military." Id. at 476. After finding sufficient record evidence to uphold the evaluation board's determination that the plaintiff was fit for duty after having spent some time on the TDRL, the court concluded that it was necessary to

"restore plaintiff to <u>active duty</u>." <u>Id.</u> at 477 (emphasis added). That court's indication that TDRL service is not active duty supports us in our decision in this retirement case.

Dambrava cites <u>United States v. Stevenson</u>, 53 M.J. 257 (C.A.A.F. 2000), in support of his assertion that time spent on the TDRL is "not a separation from active duty." Dambrava Supp. Reply at 1. That case, however, provides further support for the opposite conclusion. In describing the nature of TDRL, the Court of Appeals for the Armed Forces explained that once a member is found to be physically fit after having been listed on the TDRL, a number of options become available. The court noted that one option is to return to "active duty." <u>Id.</u> at 258. The court further noted that in times of national need, persons on the TDRL have been "recall[ed] . . . to active duty." <u>Id.</u> at 259. Thus, the <u>Stevenson</u> court likewise characterized the status of a member on the TDRL as "inactive duty," not "active duty."

Dambrava's assertion that the Board erred by failing to consider 5 U.S.C. § 8332(c)(2) and 5 U.S.C. § 6303 is without merit. Section 8332(c)(2)(A)(i) and (ii) provide, in relevant part that:

> (2) If an employee or Member is awarded retired pay based on any period of <u>military service</u>, the service of the employee or Member may not include credit for <u>such period of military service</u> unless the retired pay is awarded—
> (A) based on a service-connected disability—
> (i) incurred in combat with an enemy of the United States; or
> (ii) caused by an instrumentality of war and incurred in line of duty during a period of war . . . .

5 U.S.C. § 8332(c)(2)(A)(i)-(ii) (emphases added). Section 6303 provides similar language with respect to annual leave.[1] Dambrava argues that under those provisions,

---

[1] This provision provides, in part, that "an employee is entitled to credit for all service of a type that would be creditable under section 8332 . . . ." 5 U.S.C. § 6303(a).

he should receive credit for TDRL time since his disability resulted from a combat-related injury. Dambrava contends that the legislative history supports his position.

That argument is unsound. Based on a plain reading of the statutory language, those provisions provide that, while an employee may not receive service credit/annual leave based upon any period of military service for which he or she has received retired pay, that prohibition does not apply in the case of a period of military service for which retired pay has been awarded based upon enumerated service-connected disabilities. These statutes (5 U.S.C. §§ 8332(c)(2)(A)(i)-(ii) and 6303(a)) do not speak to whether time on TDRL is active service, the issue in this case. As discussed above, Dambrava fails to establish that the period in question, i.e., his time on the TDRL, is military service. Thus, these statutes do not aid Dambrava. Moreover, the Court finds nothing in the legislative history evincing congressional intent to import a broader definition of "military service," i.e., one that encompasses TDRL time, for purposes of those provisions. Thus, in light of the statutory language, that argument fails.

## CONCLUSION

We have considered Dambrava's alternative arguments and find them unpersuasive. Accordingly, we affirm the Board's determination that the OPM did not err in concluding that Dambrava's time spent on the TDRL did not qualify as "creditable service," and thus he failed to meet the requirements for immediate retirement under the CSRA.

## AFFIRMED

No costs.