

## NUMBER 13-07-00372-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**WILLIAM A. THOMAS,**                                                                          **Appellant,**

**v.**

**ALISON PIORKOWSKI,**                                                                          **Appellee.**

**On appeal from the 319th District Court
of Nueces County, Texas.**

## O P I N I O N

**Before Justices Yañez, Rodriguez, and Benavides
Opinion by Justice Rodriguez**

This case involves clarification of a final decree of divorce. By three issues, appellant William A. Thomas challenges the trial court's clarification order alleging that the trial court erred (1) by clarifying the decree and awarding his disability benefits as disposable retirement pay, (2) in not considering retroactive application of his permanent

disability status to set aside the clarification order, and (3) in entering a clarifying order that made a substantive change in the decree. We reverse and remand.

## I. Background

Thomas and appellee Alison Piorkowski[1] were divorced on December 3, 2004. The final decree of divorce provided for a division of the marital estate. The decree awarded the following to Piorkowski:

> W-5. All right, title, and interest in and to the sum equal to fifty percent (50%) of the disposable retired pay of WILLIAM A. THOMAS which accumulated, accrued or to which WILLIAM A. THOMAS is otherwise entitled between May 25, 1996 and the day this decree is signed which is a result of WILLIAM A. THOMAS's service in the United States Armed Forces, and that share attributable to the interest awarded to ALISON THOMAS of disposable retired pay, if, as and when received by WILLIAM A. THOMAS.

On May 5, 2006, Thomas was placed on the Temporary Disability Retirement List (TDRL) by the United States Armed Forces (Navy) with a thirty percent disability rating. *See* 10 U.S.C.A. § 1202 (1998) On June 1, 2006, Thomas began receiving benefits computed under section 1401. *See id.* § 1401 (Supp. 2009).

On September 27, 2006, Piorkowski filed a motion to clarify the decree of divorce and to enforce the division of property. By her motion, Piorkowski sought to recover, as disposable retired pay, her share of Thomas's TDRL benefits. Piorkowski alleged that Thomas was receiving retirement pay and that he refused to deliver to Piorkowski her proportionate share. Piorkowski asked that the trial court enter a clarifying order restating the terms of the decree in a manner specific enough to allow enforcement by contempt. In response, Thomas objected, alleging that the decree of divorce was specific,

---

[1]Alison Thomas's name was changed to Alison Thomas Piorkowski by the final divorce decree.

2

unambiguous, and enforceable. He also contended that the TDRL benefits were based on his disability and thus, were a form of disability pay and not retirement pay subject to division by the trial court.

In March 2007, the trial court held an evidentiary hearing on Piorkowski's motion. Over Thomas's objections, the trial court granted the motion and entered a clarification order which set out, in relevant part, the following:

*Clarification*

The [c]ourt finds that certain terms of the prior order are not specific enough to be enforced by contempt and should be clarified as ordered below . . . .

* * * * *

IT IS ORDERED that the prior order is clarified as follows:

1.      That portion of the Final Decree of Divorce awarding property to wife and as contained in paragraph W-5 on page 40 is amended as follows:

Division of Military Benefits of William A. Thomas

The [c]ourt finds, in accordance with the Uniformed Services Former Spouses' Protection Act [USFSPA], 10 U.S.C. section 1408, as follows:

1.      Alison T. Piorkowski is awarded as her sole and separate property, the sum of $510.86 per month of the disposable retired pay of William A. Thomas as long as William A. Thomas is placed on the Temporary Disability Retirement List and receiving monthly retirement pay.

2.      William A. Thomas is Ordered to deliver to Alison T. Piorkowski the sum of $510.86 per month until such time as William A. Thomas receives a final disability rating from the U.S. Navy.

* * * * *

The award of disposable retired pay made to Alison T. Piorkowski in this decree is made in compliance with the [USFSPA].

IT IS THEREFORE ORDERED AND DECREED that Alison T. Piorkowski have judgment against and recover from William A. Thomas the sum of $510.86 per month of the disposable retired pay of William A. Thomas.

\* \* \* \* \*

*Findings*

\* \* \* \* \*

5.    Since the date of divorce, William A. Thomas has been placed upon the Temporary Disability Retirement List by the U.S. Navy and is currently receiving retirement pay in the amount of $1,246.00 per month [s]ince July 1, 2006.

\* \* \* \* \*

Relief Granted

IT IS ADJUDGED that Respondent, William A. Thomas, is in contempt for each separate violation enumerated above.

The [c]ourt finds that Respondent has failed to pay to Petitioner money that was awarded in the prior decree and that the amount of unpaid payments to which Petitioner is now entitled is $4,597.74.

Thomas filed a motion for new trial requesting that the clarifying order be set aside because it (1) awarded Piorkowski property she was not entitled to receive, (2) created an obligation that was not part of the relief requested and effectively reallocated property not consistent with the final decree of divorce, and (3) did not account for his level of disability or current disability rating. At the evidentiary hearing on his motion, having recently been declared eighty percent disabled by the Veterans Administration (VA), Thomas also asked that the order awarding retirement benefits be set aside by retroactive application of his disability status to the inception of his TDRL. Over objections, the trial court denied Thomas's motion for a new trial. This appeal ensued.

4

## II.  Standard of Review

We review the trial court's ruling on a post-divorce motion for clarification of a divorce decree or for enforcement under an abuse of discretion standard.  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Baker v. Donovan*, 199 S.W.3d 577, 579 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (op. on reh'g); *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.–Texarkana 2003, pet. denied).  The test for abuse of discretion is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

## III.  Discussion

By his first issue, Thomas contends that the trial court abused its discretion by entering a clarifying order awarding Piorkowski $510.86 as disposable retired pay.  Thomas asserts that the money awarded to Piorkowski was not disposable retired pay but was disability pay and was awarded in direct violation of section 1408(a)(4)(C) of the USFSPA. *See* 10 U.S.C.A. § 1408(a)(4)(C) (1998) (providing for payment of retired pay in compliance with court orders).  We agree.

The decree of divorce awarded Piorkowski "fifty percent (50%) of the disposable retired pay . . . if, as and when received by [Thomas]."  In clarifying the decree, the trial court found that Thomas had been placed on the TDRL and had been receiving retirement pay in the amount of $1,246.00 per month since July 1, 2006.  The court awarded Piorkowski $510.86 per month of Thomas's disposable retired pay as long as Thomas was on the TDRL and was receiving monthly retirement pay.

Under the USFSPA, military retirement benefits are generally apportionable by a divorce. *See id.* § 1408(c)(1) (1998); *Mansell v. Mansell*, 490 U.S. 581, 589 (1989); *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 16-17 (Tex. App.–Waco 2002, no pet.); *Wallace v. Fuller*, 832 S.W.2d 714, 719 (Tex. App.–Austin 1992, no writ); *Gallegos v. Gallegos*, 788 S.W.2d 158, 169 (Tex. App.–San Antonio 1990, no writ). However, apportionable benefits are limited to "disposable retired pay," which is defined to exclude, among other things, disability pay including retirement benefits that may be waived in order to collect VA disability benefits and those computed using the percentage of disability on the date a person in the military is placed on TDRL. *Limbaugh*, 71 S.W.3d at 16-17, 17 n.13 (citing 10 U.S.C.A. § 1408(a)(4)(A-D) (1998)); *see Mansell*, 490 US at 589 (determining that state courts have the authority to treat disposable retired pay, not total retired pay, as community property). Specifically, "disposable retired pay" *does not include*,

> *amounts* which . . . in the case of a member entitled to retired pay under chapter 61 of this title [10 USCS §§ 1201 et seq.], *are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on* the date when the member was retired (or *the date on which the member's name was placed on the temporary disability retired list*); . . . .

10 U.S.C.A. § 1408(a)(4)(C) (emphasis added). Thomas was entitled to retired pay only after being placed on the TDRL. His gross pay, in the amount of $1246.00, was computed using the percentage of disability (thirty percent) on the date he was placed on the TDRL. *See id.* § 1401. The statute expressly excludes from "disposable retired pay" temporary disability retirement benefits—the $1246.00 in this case. *See id.* § 1408(a)(4)(C). We conclude, therefore, that Thomas's gross pay, the money at issue in this case, was not disposable retired pay and therefore, was not divisible as marital property.

6

Moreover, placement on TDRL is governed by section 1202, which provides as follows:

> Upon a determination by the Secretary concerned that a member described in section 1201(c) of this title would be qualified for retirement under section 1201 [permanent disability] of this title but for the fact that his disability is not determined to be of a permanent nature and stable, the Secretary shall . . . place the member's name on the temporary disability retired list, with retired pay computed under section 1401 of this title.

*Id.* § 1202. The statute requires a member to undergo a physical examination at least once every eighteen months in order to determine "whether there has been a change in the disability for which he was temporarily retired." *Id.* § 1210(a) (1998). A member may remain on the TDRL for up to five years. *Id.* § 1210(b) (1998). After five years on the TDRL, the member must be either returned to active duty, if fit for service; permanently retired for longevity, if at least twenty years of service has been attained; or permanently retired for disability, if he is at least thirty percent disabled and the disability is permanent and stable. *Id.* § 1210(b)-(f) (1998).

At the time Thomas was placed on TDRL, he had served in the military for ten years, five months, and eight days. He did not have twenty years service. He was not eligible for a regular retirement based on longevity. *See id.* § 3914 (1998) (requiring an enlisted member of the armed services to have at least twenty years of service to be retired); *see also id.* § 6323 (1998 & Supp. 2009) (providing that a naval officer was entitled to voluntarily retire, with the consent of the United States President, after 20 years of service). Thomas was not eligible for any retired pay other than that based on his disability. Because this pay was necessarily based on Thomas's disability, it was not divisible as marital property. *See id.* § 1408(a)(4)(C); *In re Marriage of Williamson*, 205

7

P.3d 538, 541-43 (Colo. Ct. App. 2009) (concluding that benefits of a husband who was completely ineligible for any military retirement benefits but for his disability, were based on his disability and therefore not divisible as marital property); *see In re Marriage of Wherrell*, 58 P.3d 734, 741 (Kan. 2002) (recognizing that members eligible for retirement would potentially receive both disability and retirement benefits with only the disability portion of the benefit to be excluded form "disposable retired pay"; however, if a member is not entitled to retired pay, it would not be appropriate to allow only a portion of his severance to be excluded from division under USFSPA); *Bullis v. Bullis*, 467 S.E.2d 830, 836 (Va. Ct. App. 1996) (en banc) (concluding that the USFSPA "exempts only that portion of Chapter 61 benefits which corresponds to the retiree's disability percentage rating at the time of retirement. If, for example, a service member retires with 60% disability under Chapter 61, then 60% of the member's retirement benefits are excluded from the definition of 'disposable retired pay'. The remaining 40% of the member's benefits may be judicially apportioned under state community property laws.").

Piorkowski asserts that the plain reading of the statute, specifically certain phrases found in sections 1202, 1210, and 1211, indicates that the status of a member on the TDRL is akin to inactive duty or retirement. *See* 10 U.S.C.A. § 1202 (including "would be qualified for retirement" and "with retired pay" in section language); *id*. § 1210 (including "temporarily retired" in language); *id.* § 1211 (a-b) (1998) (referring to "active duty"); *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994) ("When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary."). However,

sections 1202, 1210, and 1211 should be read in conjunction and harmony with other sections of the statute which provide for the computation of pay when a member is placed on the TDRL and with supporting case law. *See Hooks v. Tex. Dep't of Water Res.*, 611 S.W.2d 417, 419 (Tex. 1981). Doing so, we cannot conclude that because Thomas's status may be akin to retirement because such words are used in certain sections of the statute, his pay must be retirement pay and not disability pay. We are not persuaded by that reasoning, especially in light of our discussion above.

Piorkowski relies on *Dambrava v. Office of Personnel Mgmt.*, 466 F.3d 1061, 1063-64 (Fed. Cir. 2006) (determining that TDRL placement is akin to retirement) and *Bradley v. United States*, 161 F.3d 777, 782 (4th Cir. 1998) (deciding that TDRL "status is comparable to permanent retirement status"), for the proposition that payments received by a military member while on the TDRL should be considered retirement pay. In *Dambrava*, the court determined that Gintaras Dambrava, a civil servant, was not qualified for immediate retirement because his time on the TDRL was not active service and could not be included as service credit in the calculation. 466 F.3d at 1065. The *Bradley* court, in a summary judgment proceeding, concluded that Sharon Bradley's status was comparable to permanent retirement when her medical treatment at issue in the case occurred while she was on the TDRL. 161 F.3d at 782. Thus, the action was not barred by the immunity doctrine. *Id.* (citing *McGowan v. Scoggins*, 89 F.2d 128, 137-39 (9th Cir. 1989) (holding that the *Feres* doctrine did not bar a retired Army officer from suing for injuries suffered in an attack by military personnel while he was on the base to obtain a parking sticker)).

The issue in *Dambrava* was whether Dambrava's time on the TDRL was active service. *Dambrava*, 466 F.3d at 1062. The *Dambrava* court determined that it was not. *Id.* at 1065. The issue in *Bradley* was whether Bradley's status was comparable to permanent retirement when she received the complained-of medical treatment. *Bradley*, 161 F.3d at 782. In this case, we are addressing a very different issue—an issue that is not dependent on the status of Thomas, but on how his pay is calculated and how its calculation is dependent upon his disability. We cannot read *Dambrava* and *Bradley* in isolation as Piorkowski urges.

Piorkowski also relies on *Baker v. Donovan* and *In the Marriage of Reinauer*, to support her contention that the trial court awarded disposable retirement pay, not disability benefits, and, thus, did not abuse its discretion. *Baker*, 199 S.W.3d at 578; *Reinauer*, 946 S.W.2d 853, 855-56 (Tex. App.–Amarillo 1997, no pet.). These cases, however, are distinguishable from the present case.

In *Baker*, the divorce decree awarded Karen Donovan "50% of Michael Allen Baker's present accrued benefit as of the date of the decree, in the U.S. Military Retirement System." 199 S.W.3d at 578. In 2002, Baker began receiving retirement benefits of approximately $5,000 per month including $1,069 designated as VA disability pay. *Id.* When Baker failed to pay Donovan's portion of his retirement, Donovan filed a petition to enforce and clarify the decree. *Id.* The trial court awarded Donovan a portion of Baker's military retirement benefits without excluding his VA disability pay. *Id.* at 578-79. The *Baker* court concluded that the trial court did not err in doing so because the proceeding was an enforcement and clarification proceeding, not a motion to modify proceeding. *Id.*

10

at 580. And a motion to modify "would have been required for the trial court to alter or change the substantive division of property and, thus, [Baker's] request [was] beyond the power of the trial court." *Id.* (citing TEX. FAM. CODE ANN. § 9.007(b)). The court concluded that Baker was attempting to collaterally attack the decree in error because there had been no appeal from the divorce court's division of the property. *Id*.

In the present case, the divorce decree awarded interest in "fifty percent (50%) of the disposable retired pay." In his first issue, Thomas is not challenging the substance of the division. He is not arguing that Piorkowski is not entitled to a portion of his disposable retired pay. Rather, Thomas is complaining of the trial court's actions in determining that his pay is disposable retired pay.

Likewise, *Reinauer* is distinguishable. The *Reinauer* court, under the law in effect at that time, concluded that Reinauer's compensation under section 1201 (permanent disability) "had been held to be an earned property right accrued by reason of years of service rather than gift or gratuity." *Id.* at 858.

The court continued with the following reasoning:

> That it may be labeled "disability retirement pay," or the like, mattered not given its substantive nature. Nor was the fact that it arose due to his forced retirement of consequence. Thus, having satisfied the requisite indicia, the monies paid Reinauer by the Navy were, and are, "retirement pay" within the scope of the 1979 decree.

*Id.*

The Reinauer divorce decree became final in 1979, years before the present USFSPA went into effect, and thus, the USFSPA was not controlling. *In the Marriage of Reinauer*, 946 S.W.2d 853, 857 (Tex. App.–Amarillo 1997, no pet.); *see* Department of

11

Defense Authorization Act, 1983, Pub. L. No. 97-252 § 1001, 96 Stat. 730-35 (1982).  In 1979, Texas courts considered military retirement benefits and chapter 61 military benefits as a community asset subject to division upon divorce.  *Reinauer*, 946 S.W.2d 853, 857 (citing *Busby v. Busby*, 457 S.W.2d 551, 551-52, 554 (Tex. 1970), *Kirkham v. Kirkham*, 335 S.W.2d 393, 394 (Tex. Civ. App. 1960, no writ)). Under the USFSPA today, we would not reach the same result.

Therefore, we conclude that the trial court erred in determining that Thomas's pay was disposable retired pay, in awarding a portion thereof to Piorkowski in the amount of $510.86 per month, in adjudging Thomas in contempt, and in finding that Piorkowski was entitled to $4,597.74, the amount of unpaid payments.  *See Downer*, 701 S.W.2d at 242. The trial court abused its discretion when it entered a clarifying order reflecting this relief. *See Worford*, 801 S.W.2d at 109.  Accordingly, we sustain Thomas's first issue.

Having sustained this first issue, we need not reach the remaining issues as they are not dispositive of this appeal.  *See* Tex. R. App. P. 47.1.

IV.  Conclusion

We reverse and remand for entry of a clarification order consistent with this opinion.


NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed
this 11th day of June, 2009.