233 P.3d 1139

**In re the Marriage of Lori A. DAVIES, Petitioner/Appellee,**

v.

**Mark W. BERES, Respondent/Appellant.**

**No. 1 CA–CV 08–0697.**

Court of Appeals of Arizona, Division 1, Department E.

June 8, 2010.

---

Mark W. Beres, Tucson, In Propria Persona.

Platt & Westby, PC By Bryan L. Eastin, Phoenix, Attorneys for Petitioner Appellee.

Gust Rosenfeld, PLC By James H. Marburger, Phoenix, Attorneys for Amicus Curiae ULSG, LLC.

## OPINION

OROZCO, Judge.

¶ 1 Mark W. Beres (Husband) appeals the decision of the family court which concluded that post-dissolution military Temporary Disability Retired List (TDRL) benefits were partially community property, subject to apportionment. For the reasons that follow, we conclude TDRL benefits are the separate property of the disabled spouse. Accordingly, we vacate the order of the family court in part and remand for additional proceedings.

## FACTS AND PROCEDURAL BACKGROUND [1]

¶ 2 Husband and his former spouse, Lori A. Davies (Wife) were married from October

---

1. We disregard Husband's statement of facts because he fails to cite to the record as required by Arizona Rule of Civil Appellate Procedure 13(a)(4). *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 257 n. 1, 963 P.2d 334, 336 n. 1 (App.1998). Additionally, we disregard those documents contained in the appendix to the opening brief that are not part of the record. *See GM Dev. Corp. v. Cmty. Am. Mortgage Corp.*, 165 Ariz. 1, 4–5, 795 P.2d 827, 830–31 (App. 1990) (noting that appellate review is limited to the record before the trial court).

1992 to January 2003, when the marriage was dissolved pursuant to a Florida dissolution decree (Decree). During the marriage, Husband served in the United States Air Force, accumulating 121 months of service. With respect to Husband's military retirement, the Decree provides:

> The Wife is awarded an interest in the United States Air Force Military Retirement arising out of Husband's service with the United States Air Force, as of November 19, 2002, according to the following formula: The number of months of marriage during which the Husband served in the armed services during the marriage (121 months), divided by the total number of months for which the husband spent in the Armed Forces. The resulting percentage shall then be multiplied by 50% (.50) to determine the Wife's percentage share of any disposable retirement or retainer pay of the Husband. The Wife's portion shall not be decreased by any voluntary or involuntary act of the Husband including disability or otherwise.

¶ 3 On August 31, 2006, Husband was relieved from active duty and placed on the TDRL with a thirty percent disability rating. At that time, Husband had accumulated a total of fifteen years and three months (183 months) of active duty service. Husband began receiving TDRL pay computed in accordance with 10 U.S.C. § 1401 (2006).[2] Husband has paid a portion of his TDRL pay to Wife since he began receiving payments. It is not clear from the record when Husband discontinued making such payments or the total amount he paid to Wife. Husband later applied for and received a Veterans Administration disability rating of forty percent.[3]

¶ 4 Both parties subsequently raised issues concerning Wife's interest, if any, in the TDRL benefits. Husband maintained Wife had no interest in his TDRL benefits because

he was ineligible for retirement for longevity, he was not retired and his status on TDRL was temporary. Wife believed she was entitled to a percentage of the TDRL benefits based on the fixed formula in the Decree. The family court appointed a special master who issued a report. In the report, the special master explained that whether Wife had any interest in Husband's TDRL benefits depended on the court's interpretation of Arizona case law and the Decree. Based on his analysis, the special master recommended the court find Husband's TDRL benefits partially apportionable. He calculated Wife's interest to be $721 per month.[4]

¶ 5 Husband objected to the special master's report. The family court overruled Husband's objections and adopted the findings and conclusions in the special master's report. In August 2008, the court ordered Husband to pay Wife $721 per month from his TDRL pay, and made the award retroactive to April 1, 2008, leaving $3605 in arrears. Husband timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 and –2101.B (2003).

## DISCUSSION

¶ 6 Husband challenges numerous aspects of the special master's report. His challenges center on one issue: whether any part of Husband's TDRL benefits are community property and thus apportionable to Wife. We review the family court's characterization of property *de novo* and the apportionment of community property for an abuse of discretion. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15, 5 P.3d 911, 915 (App.2000); *Hrudka v. Hrudka*, 186 Ariz. 84, 93, 919 P.2d 179, 188 (App.1995). Here, the issue of whether TDRL benefits are apportionable is a mixed question of law and fact which we review *de novo*. *Danielson v. Ev-*

---

2. Husband was placed on the TDRL and began receiving "retired pay" as calculated under 10 U.S.C. § 1401. For purposes of this opinion and for clarity, we refer to the "retired pay" Husband received while on the TDRL as either "TDRL pay" or "TDRL benefits."

3. This permits Husband to waive an amount of military retired pay and receive veterans disabili-

ty benefits instead, in the amount waived, when he retires. *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

4. The explanation regarding how this amount was calculated is addressed in our discussion. *Infra* ¶ 16.

*ans,* 201 Ariz. 401, 406, ¶ 13, 36 P.3d 749, 754 (App.2001); *Huskie v. Ames Bros. Motor & Supply Co.,* 139 Ariz. 396, 401, 678 P.2d 977, 982 (App.1984).

¶ 7 To fully explain the issue presented, it is necessary to discuss the history of the law regarding military retirement benefits. In 1977, the Arizona Supreme Court ruled that military retirement benefits could be treated as community property to the extent attributable to community efforts. *Van Loan v. Van Loan,* 116 Ariz. 272, 273–74, 569 P.2d 214, 215–16 (1977). In 1981, the United States Supreme Court held, in *McCarty v. McCarty,* 453 U.S. 210, 223, 235, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), that characterizing military retirement benefits as community property was contrary to federal law, and that federal law preempted state law on community property division. *McCarty* thus overruled *Van Loan. De Gryse v. De Gryse,* 135 Ariz. 335, 336, 661 P.2d 185, 186 (1983).

¶ 8 In response to *McCarty,* Congress enacted the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2006) (USFSPA), which became effective February 1, 1983. *Beltran v. Razo,* 163 Ariz. 505, 506, 788 P.2d 1256, 1257 (App.1990). Under the USFSPA, state courts were given authority to treat "disposable retired pay" or "retainer pay" as community property and therefore they could apportion such benefits in dissolution cases. 10 U.S.C. § 1408(c)(1); *Mansell,* 490 U.S. at 589, 109 S.Ct. 2023; *In re Marriage of Gaddis,* 191 Ariz. 467, 468, 957 P.2d 1010, 1011 (App.1997); *see also De Gryse,* 135 Ariz. at 336–37, 661 P.2d at 186–87 (explaining *Van Loan* was revived by the USFSPA and thereafter governed questions concerning military retirement benefits). Disposable retired pay is defined, in pertinent part as:

> [T]he total monthly retired pay to which a member is entitled less amounts which
>
> . . . .
>
> in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's dis-

ability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list).

10 U.S.C. § 1408(a)(4)(C). Chapter 61 of Title 10 addresses retirement or separation from the military for a physical disability. *Id.* at §§ 1201 to –1222 (2006 & Supp.2008).

¶ 9 If a member's disability is indeterminable as to its permanent and stable nature, the member of the armed forces may be placed on the TDRL for a maximum of five years. *Id.* at §§ 1202, 1210(b), (h). After five years, the member either returns to active duty, permanently retires for longevity if he has reached twenty years of service, or is placed on the permanent disability retired list (PDRL). *Id.* at § 1210(b); *see also* 10 U.S.C. § 8911 (2006) (a member of the Air Force generally receives retired pay after twenty years of service).

¶ 10 While on the TDRL, a member receives TDRL pay[5] pursuant to one of two alternative formulas listed as "Formula No. 2" in 10 U.S.C. § 1401(a). *Id.* at § 1202. Under the first formula, the member receives 2.5% "of his monthly basic pay for each year of service." *Luna v. Luna,* 125 Ariz. 120, 124, 608 P.2d 57, 61 (App.1979); *see also* 10 U.S.C. §§ 1401(a), 1406(b) (2006). Under the second formula, TDRL pay is computed by multiplying a member's monthly basic pay by the percentage of his disability. 10 U.S.C. §§ 1401(a), 1406(b). The result is increased by the amount necessary for the member to receive at least fifty percent of his basic pay. *Id.* at § 1401(a). A member is entitled to use the formula most favorable to him. *Id.* at § 1401(b).

¶ 11 In this case, Husband was receiving $2862 per month in TDRL pay. This was calculated using the second formula consisting of fifty percent of Husband's 2006 basic pay plus a cost of living adjustment (COLA). TDRL pay resulting from application of the second formula is expressly excluded from the definition of disposable retired pay because such pay is computed using the percentage of a member's disability. *Id.* at § 1408(a)(4)(C). Additionally, the Decree ex-

**5.** This calculation includes retainer pay. 10 U.S.C. § 1408(a)(7).

pressly limits Wife's interest in Husband's military retirement benefits to disposable retirement pay or retainer pay. Because these TDRL benefits are not disposable retired pay, the benefits are not community property and are therefore not apportionable. *See Thomas v. Piorkowski*, 286 S.W.3d 662, 666 (Tex.App.2009) (concluding TDRL benefits are not divisible as marital property because the benefits are not disposable retired pay).

¶ 12 This conclusion, however, does not end our inquiry. TDRL benefits may also be calculated under the first formula.

■■■ ¶ 13 As previously stated, in Arizona, military retirement benefits are generally treated as community property to the extent attributed to community efforts. *Edsall v. Superior Court*, 143 Ariz. 240, 241, 693 P.2d 895, 896 (1984); *Van Loan*, 116 Ariz. at 273–74, 569 P.2d at 215–16. However, disability benefits are the disabled spouse's separate property. *Danielson*, 201 Ariz. at 407, ¶ 19, 36 P.3d at 755; *In re Marriage of Kosko*, 125 Ariz. 517, 519, 611 P.2d 104, 106 (App.1980). A retired service person is precluded from reducing his or her former spouse's interest in military retirement pay by electing to forego a portion of that pay in exchange for disability benefits. *See Danielson*, 201 Ariz. at 409 n. 7, ¶ 26, 36 P.3d at 757 n. 7 (listing cases).

¶ 14 Prior to enactment of the USFSPA, Arizona issued a number of decisions concerning retirement and disability benefits. In *Flowers v. Flowers*, several types of "disability payments" were identified and categorized, including "semi-retirement disability" and "pure disability."[6] 118 Ariz. 577, 580, 578 P.2d 1006, 1009 (App.1978) (Jacobson, J., specially concurring). The nature of such payments, as community or separate, depended on whether the asset was acquired by "onerous title" through the labor and industry of the husband or wife during the mar-

riage, or by "lucrative title" through some other source. *Id.* at 580–81, 578 P.2d at 1009–10. "Property acquired by onerous title is community property and property acquired by lucrative title is separate property." *Luna*, 125 Ariz. at 125, 608 P.2d at 62. Pure disability payments are received by a person who suffers a disability connected to his employment regardless of length of service and are the separate property of the disabled spouse. *Flowers*, 118 Ariz. at 580, 582, 578 P.2d at 1009, 1011 (noting service-connected disability payments are not received as a result of past labor). Semi-retirement disability payments are based in part on length of service and in part on percentage of disability and may be considered a community asset. *Id.* at 580, 578 P.2d at 1009 (citing 10 U.S.C. § 1201).

¶ 15 In *Luna v. Luna*, we also addressed issues concerning disability retired pay. 125 Ariz. at 122, 125, 608 P.2d at 59, 62. In that case, the husband was permanently retired with a 100 percent disability rating, prior to the divorce, with just over fifteen years of service in the Air Force. *Id.* Under 10 U.S.C. § 1401(a), two formulas were available to calculate husband's retirement pay. *Id.* at 124, 608 P.2d at 61. The formulas are nearly identical to the ones at issue here, except under the second formula in *Luna*, there was no automatic increase for a member to receive fifty percent of his basic pay. *Id.; see* 10 U.S.C. § 1401(a); *see supra* ¶ 10. In *Luna*, the court calculated the portion of the husband's benefits attributable solely to his disability by subtracting the percentage result of the first formula from the percentage result of the second formula. 125 Ariz. at 124–25, 608 P.2d at 61–62 (calculating the benefit percentage under the second formula as 75 percent, and the benefit under the first formula as 37.5 percent, leaving a difference of 37.5 percent). The court concluded 37.5 percent of the husband's monthly benefits

---

**6.** *Flowers* concerned United States Civil Service disability retirement benefits. 118 Ariz. at 578, 578 P.2d at 1007. Due to the similarity between disability benefits and personal injury benefits, the court held such benefits were community property subject to apportionment. *Id.* at 579, 578 P.2d at 1008. The decision was based on the Arizona rule existing at the time: that damages recovered for personal injuries sustained during

marriage were community property. *Id.* However, this rule was later abandoned in *Jurek v. Jurek*, which held that compensation for personal injuries is separate property. 124 Ariz. 596, 598, 606 P.2d 812, 814 (1980). In light of *Jurek*, the reasoning of the *Flowers* decision is no longer sound. *See Villasenor v. Villasenor*, 134 Ariz. 476, 477 n. 2, 657 P.2d 889, 890 n. 2 (App.1982).

was attributed solely to his disability and was therefore his sole and separate property. *Id.* at 125, 608 P.2d at 62. The remainder of the husband's benefits was community property and apportionable. *Id.*

¶ 16 In the present case, the special master's report incorporates the principles of *Flowers* and *Luna.*[7] The special master recommended to the extent Husband's TDRL benefits could be calculated by use of credited service (under the first formula), the benefits constituted onerous title and were apportionable.[8] Under the first formula, Husband's TDRL benefits would have been $2182 per month.[9] Pursuant to the fixed formula in the Decree, Wife's percentage interest in Husband's military retirement pay is calculated to be 33.06%.[10] Multiplying $2182 by 33.06% yields $721 in monthly benefits, the amount the court awarded to Wife.

¶ 17 Despite the fact that Husband's TDRL benefits could have been calculated under the first formula, we find *Luna* and the *Flowers* concurring opinion inapplicable due to the temporary nature of Husband's benefits.[11] *See Luna,* 125 Ariz. at 122, 608 P.2d at 59 (explaining that husband was removed from the TDRL and permanently retired with a 100 percent disability rating). Husband is receiving TDRL payments in lieu of a monthly salary from the military. *See, e.g., Randolph v. U.S.,* 31 Fed.Cl. 779, 781 n. 5 (1994) (noting TDRL benefits are geared toward rehabilitation or stabilization of a medical condition). Pursuant to 10 U.S.C. § 1202, these benefits are temporary in nature, and are "solely attributable to [Husband's] disability." *See Luna,* 125 Ariz. at 125, 608 P.2d at 62. Thus, although TDRL benefits are calculated as "retired pay" under the statute, it is a substitute for wages, and

is not actual retirement pay. 10 U.S.C. § 1401. Arizona case law is clear that a spouse's income after dissolution is the separate property of that spouse. A.R.S. § 25–213.B (Supp.2009)[12] (property acquired by a spouse after service of a petition for dissolution, if the petition results in a decree, legal separation, or annulment, is the separate property of that spouse); *see also Luna,* 125 Ariz. at 125, 608 P.2d at 62 (after dissolution, reduced earning capacity of a spouse becomes the separate loss of the disabled spouse).

¶ 18 Our conclusion is further supported by the similarities between TDRL benefits and workers' compensation as discussed by *Amicus Curiae,* Uniformed Services Former Spouses Protection Act Liberation Support Group, LLC. *See Rickman v. Rickman,* 124 Ariz. 507, 509, 605 P.2d 909, 911 (App.1980) (adopting a statement from the *Flowers* concurrence stating workers' compensation and service-connected disability payments are not a result of past labor and thus are not "earned"); *see Mylette v. Mylette,* 140 Misc.2d 607, 608, 531 N.Y.S.2d 489, 490 (Sup. Ct.1988) (comparing disability pay to workers' compensation). Workers' compensation is awarded to an injured employee in place of lost wages. *Bugh v. Bugh,* 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980). Similarly, once placed on the TDRL, the member receives TDRL benefits in place of his basic pay. 10 U.S.C. § 1202. Computation of workers' compensation is based on lost earning capacity. *Bugh,* 125 Ariz. at 192, 608 P.2d at 331. Likewise, TDRL benefits are based in part on a member's basic pay. 10 U.S.C. § 1401(a). The Industrial Commission determines whether a worker's disability

---

7. Although the special master did not cite *Luna* as a source considered, his report parallels the logic and reasoning in that case.

8. In this decision, we are dealing solely with TDRL benefits. We do not decide whether the special master's calculations would be applicable in the event Husband is removed from the TDRL and placed on the PDRL.

9. This is calculated as follows: 15.25 (years of service) × 2.5% = 38.125%. 38.125 × basic pay (assumed to be $5724: $5596 increased by COLA) = $2182. Under the second formula,

Husband's TDRL benefits are $2862 per month. *See supra* ¶ 11.

10. This is calculated as follows: 121 (months of service during marriage) / 183 (total months of service) = .6612 × 50% = 33.06%.

11. As previously mentioned, these cases also predate the enactment of the USFSPA.

12. We cite to the current versions of the applicable statutes as no revisions material to this opinion have since occurred.

is temporary or permanent. *Cardinale v. Indus. Comm'n,* 116 Ariz. 342, 345, 569 P.2d 284, 287 (App.1977). Similarly, the Secretary of the Air Force determines whether a disability of a member in the Air Force is temporary or permanent. 10 U.S.C. §§ 1201, 1202, 101(a)(9) (2006 & Supp.2008). Workers' compensation benefits paid to an injured spouse after dissolution are the injured spouse's separate property regardless of whether the injury occurred during marriage. *Bugh,* 125 Ariz. at 193, 608 P.2d at 332. Likewise, TDRL benefits paid to a disabled spouse, due solely to his disability, after dissolution are the separate property of the disabled spouse. Therefore, regardless of which formula is used to calculate TDRL benefits, such benefits are the separate property of the disabled spouse.

¶ 19 Further, Husband is not depriving Wife of any benefit she would otherwise be entitled to. Husband would not be entitled to any benefits at this point but for his disability because he has not completed twenty years of service. *See* 10 U.S.C. § 8911 (setting forth the twenty year service requirement for retirement). Furthermore, the portion of the Decree which states "[t]he Wife's portion shall not be decreased by any voluntary or involuntary act of the Husband including disability or otherwise" refers only to Husband's retirement pay and not any potential disability pay for which Husband was subsequently eligible.

¶ 20 Moreover, we distinguish TDRL benefits from PDRL benefits, which a member may also receive without achieving the longevity requirement. PDRL benefits are more analogous to actual retirement benefits. 10 U.S.C. § 1201. In a situation concerning permanent disability, a member is declared permanently disabled and receives benefits when he or she will no longer be active in the military. *Id.* With TDRL benefits, there has been no determination whether the disability is of a "permanent nature and stable" and thus whether the member will subsequently be able to return to the military and acquire more years of service toward his total retirement benefits. 10 U.S.C. § 1202; *see Dambrava v. Office of Personnel Mgmt.,* 466 F.3d 1061, 1063 (Fed.Cir.2006) (stating placement on the TDRL is akin to inactive duty); *In re Marriage of Williamson,* 205 P.3d 538, 541 (Colo.App.2009) (noting time on the TDRL does not count toward the twenty year longevity requirement). Moreover, a calculation of benefits under the second formula differs between a member with a permanent disability and a member with a temporary disability. 10 U.S.C. § 1401(a). With TDRL pay based on the second formula, the amount is automatically increased so a member receives at least fifty percent of his basic pay. *Id.* With PDRL pay, there is no such increase, and pay under the second formula is computed based solely on percentage of disability. *Id.* The lack of automatic increase could become significant when a member is choosing under which formula to receive retired pay. *Id.* at (b). For these reasons, this opinion applies only to members receiving TDRL benefits.

¶ 21 Wife argues Husband's TDRL benefits are akin to the semi-retirement payments discussed in the *Flowers* concurrence, because years of service and basic pay are used in determining Husband's monthly benefits. However, the concurrence did not address TDRL benefits. *Flowers,* 118 Ariz. at 580–82, 578 P.2d at 1009–11. Additionally, even if such benefits are to be categorized, we find TDRL benefits more akin to pure disability benefits. Husband's disability was received in the line of duty and was a direct result of a combat-related injury. *See id.* at 580, 578 P.2d at 1009 (explaining a disability causally related to employment or a service-connected disability should be considered in the pure disability category). Service-connected disabilities are not the result of past labors and are therefore not "earned" and not acquired by onerous title. *Id.* at 582, 578 P.2d at 1011. Moreover, although length of service is a variable under the first formula, Husband's benefits were actually calculated in accordance with the second formula, which depends primarily on the existence and the extent of Husband's disability. *See Luna,* 125 Ariz. at 125, 608 P.2d at 62 (stating benefits attributable solely to a person's disability are not a form of deferred compensation for past services, but rather, compensation for loss of military pay). What Wife fails to acknowledge is the reason for Hus-

band's receipt of these TDRL benefits. Husband is only entitled to TDRL benefits due to his disability. Arizona has repeatedly held military disability benefits, after dissolution, are separate property. *Perras v. Perras,* 151 Ariz. 201, 203, 726 P.2d 617, 619 (App.1986); *Rickman,* 124 Ariz. at 509, 605 P.2d at 911; *Luna,* 125 Ariz. at 125, 608 P.2d at 62. Finally, even if TDRL benefits were considered semi-retirement payments, the *Flowers* concurrence merely noted a potential argument could be made that a portion of the payments may be considered a community asset. *Flowers,* 118 Ariz. at 582, 578 P.2d at 1011. *Flowers* did not actually determine whether semi-retirement payments were community property.

¶ 22 Wife also argues *Villasenor v. Villasenor* provides guidance in this case. In *Villasenor,* the court addressed a civil service disability retirement annuity. 134 Ariz. at 476, 657 P.2d at 889. Relying in part on *Luna,* the court determined the annuity had both a retirement component and a disability component and concluded the retirement component represented deferred compensation and was therefore community property. *Id.* at 478–79, 657 P.2d at 891–92.

¶ 23 TDRL benefits are distinguishable from the disability retirement annuity at issue in *Villasenor. Id.* at 478, 657 P.2d at 891. First, the *Villasenor* benefits are governed by different provisions of the United States Code. *Id.* at 478, 657 P.2d at 891 (listing the relevant portions of Title 5 Chapter 83). Second, a disability was merely one of several conditions causing the *Villasenor* annuity to vest. *See id.* at 479, 657 P.2d at 892 (explaining other ways to qualify for the annuity were based on age and years of service). Here, the disability was the only reason Husband was entitled to TDRL benefits. Moreover, the annuity in *Villasenor* was not temporary, unlike the TDRL benefits in this case. *Id.* at 478–79, 657 P.2d at 891–92. Finally, TDRL benefits are not a form of deferred compensation, but are instead a wage substitute. Accordingly, *Villasenor* is inapposite.

¶ 24 Although the nature of post-dissolution TDRL benefits presents an issue of first impression in Arizona, courts in two other states have recently published opinions on this issue. In *In re Marriage of Williamson,* the Colorado Court of Appeals held post-dissolution TDRL benefits are disability benefits and are not divisible as marital property. 205 P.3d at 543. There, six years after dissolution, the husband was placed on the TDRL with a thirty percent disability rating after serving over sixteen years in the United States Armed Forces. *Id.* at 539–40. The evidence showed husband's benefits were calculated under the second formula based on husband's percentage of disability. *Id.* at 542. In determining whether the TDRL benefits were divisible marital property, the court found it significant that husband did not have twenty years of service at the time he was placed on the TDRL. *Id.* Because husband was ineligible for military retirement benefits, but for his disability, the court concluded all of his benefits were based on his disability. *Id.* Therefore, the court held that because all of husband's benefits were based on his disability, they were not divisible as marital property pursuant to 10 U.S.C. § 1408(a)(4)(C). *Id.*

¶ 25 Similarly, in *Thomas v. Piorkowski,* husband and wife were divorced in 2004 and, pursuant to the dissolution decree, wife was entitled to receive fifty percent of husband's disposable retired pay resulting from husband's service in the military. 286 S.W.3d at 664. Husband was placed on the TDRL in 2006 with a thirty percent disability rating after more than ten years of service. *Id.* at 664, 667. Like *Williamson,* the court found because husband was not eligible to retire but for his disability, the TDRL benefits were not divisible as marital property. *Id.* at 667. The court further reasoned that husband's TDRL benefits were computed using the second formula, which 10 U.S.C. § 1408(a)(4)(C) expressly excludes from disposable retired pay. *Id.* at 666. Finally, the court explained husband's pay calculation was dependent upon his disability. *Id.* at 668.

¶ 26 Although neither *Williamson* nor *Thomas* addresses the first formula available to calculate TDRL benefits, we find the cases persuasive. Both cases concluded the USFSPA, 10 U.S.C. § 1408(a)(4)(C), pre-

vented their respective courts from dividing TDRL benefits as marital property when the benefits were calculated based upon percentage of disability. *Williamson,* 205 P.3d at 542; *Thomas,* 286 S.W.3d at 666. We agree with that conclusion. To the extent Husband's TDRL benefits could have been calculated pursuant to the first formula, we decline to find such benefits constitute community property for the reasons previously explained. Accordingly, we vacate the family court's order awarding Wife an interest in Husband's TDRL benefits.[13]

¶ 27 Husband also argues he should be refunded the amount of TDRL benefits he has paid to Wife. Wife contends this argument is waived. According to the record, the issue was raised, but not addressed. *See Payne v. Payne,* 12 Ariz.App. 434, 435, 471 P.2d 319, 320 (1970) (explaining a court must have the opportunity to rule on an issue). Because this argument was raised below, but not addressed by the family court, we will not address it on appeal. *Chalpin v. Snyder,* 220 Ariz. 413, 418 n. 4, ¶ 16, 207 P.3d 666, 671 n. 4 (App.2008); *see also Stewart v. Mut. of Omaha Ins. Co.,* 169 Ariz. 99, 108, 817 P.2d 44, 53 (App.1991) (finding it inappropriate to address an issue on appeal when the court did not rule on the merits of the issue).

¶ 28 This argument also presents issues necessitating factual determinations including, but not limited to, the amount Husband paid Wife, when such payments were made and whether such payments could be considered a gift. Accordingly, we remand this issue to the family court to determine whether Husband is entitled to a refund for payments he made to Wife.

*Attorney fees*

¶ 29 Wife requests attorney fees on appeal pursuant to A.R.S. § 12–341.01.C (2003) contending Husband's appeal is frivolous. *See Cordova v. Parrett,* 146 Ariz. 79, 83, 703 P.2d 1228, 1232 (App.1985) (awarding attorney fees under A.R.S. § 12–341.01.C for filing a frivolous appeal). We do not find this appeal to be frivolous as it presented an issue

of first impression in Arizona. Accordingly, we deny Wife's fee request pursuant to A.R.S. § 12–341.01.C.

¶ 30 Wife also requests attorney fees for Husband's failure to follow the rules for filing an appeal. *See Jhagroo v. City of Phoenix Municipal Court,* 143 Ariz. 595, 598, 694 P.2d 1209, 1212 (App.1984) (awarding attorney fees for a party's failure to cite to the record). Husband violated Arizona Rules of Civil Appellate Procedure (ARCAP) 13(a)3, 4 and 6 by failing to cite to the record in his opening brief, failing to set forth authority for this court's jurisdiction and failing to set forth the applicable standard of review for his arguments. Further, Husband filed a defective supersedeas bond. ARCAP 7(a)(1). In our discretion, we decline to award Wife fees. However, in the future we anticipate Husband's compliance with our rules. *See Bird v. State,* 170 Ariz. 20, 24, 821 P.2d 287, 291 (App.1991) (declining to award fees for a failure to comply with Rule 13(a)4).

## CONCLUSION

¶ 31 For the foregoing reasons, we find Husband's TDRL benefits are his sole and separate property not subject to apportionment. Accordingly, we vacate the portion of the family court's order awarding Wife an interest in Husband's TDRL benefits and remand for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge, and DONN KESSLER, Judge.

---

**13.** Because we vacate the award of TDRL benefits to Wife, we need not address Husband's remaining arguments concerning additional errors in the special master's report, the calculation of Wife's benefits or the special master's alleged partiality.