NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

NICOLE CRYSTAL MINDIOLA, *Petitioner/Appellee,*

*v.*

AARON JACOB MINDIOLA, *Respondent/Appellant.*

No. 1 CA-CV 21-0271 FC
FILED 12-30-2021

Appeal from the Superior Court in Maricopa County
No. FC2018-055324
The Honorable Dawn M. Bergin, Judge (retired)

**AFFIRMED**

COUNSEL

Nicole Crystal Mindiola, Tonopah
*Petitioner/Appellee*

Aaron J. Mindiola, Hillsboro, Oregon
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1** Aaron Mindiola ("Father") appeals from the superior court's dissolution decree ("Decree"). He raises several issues about the Decree, including the court's jurisdiction over parenting issues. Nicole Mindiola ("Mother") did not file an answering brief.[1] We reject the arguments raised and affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** In 2002, Mother and Father were married in California, where they had two children, Shauna and Lars.[2] The family lived in Washington from 2014 through 2017. In January 2018, Mother moved to Oregon with the children to earn a college degree. Around that time, Father ended his active-duty position with the Navy and moved to Phoenix, where he worked at ASM America. In Phoenix, he lived with a female roommate, explaining to Mother that her presence would reduce expenses. This roommate was, or became, Father's girlfriend.

**¶3** Mother struggled in college while parenting both children, so Mother and Father agreed to relocate Lars to Father's parent's home in California. Eventually, Mother concluded that she could not complete her degree and moved to Phoenix to be with Father. Shauna was sent to stay with Father's parents while Mother and Father settled. Mother found work at a warehouse. Soon after, the parties purchased a property in Phoenix, and Lars came to live with them while Shauna continued to live with her

---

[1]     Mother's failure to file an answering brief with this court may be treated as a confession of error. *See In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 2 (App. 2002). But we decline to do so here because the children's best interests are involved. *See Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009).

[2]     To protect the children's identities, we refer to them by pseudonyms.

paternal grandparents. Father then rented a separate Phoenix property for his girlfriend without Mother's knowledge.

**¶4**       After Mother returned to Arizona, Father provided her with little financial support. Father gave Mother money at his discretion and interrogated her about her spending. Father also harangued Mother to seek other employment. Yet she could not monitor Father's spending because he stopped making deposits into accounts she could access. Finally, needing money, Mother accepted a job with longer hours as a bus driver in Tonopah and relocated with Lars to her sister's home there.

**¶5**       Mother told Father that she wanted Shauna to leave Father's parents and live with her. Father told Shauna that she did not have to live with Mother. Mother drove to California to bring Shauna to Arizona but returned without her after a physical altercation. Mother reportedly pulled Shauna's hair and tried to drag her out of her grandparents' house. Shauna later expressed reluctance at visiting Mother in Arizona.

**¶6**       The parties disputed who should use the community vehicles: a Jeep, motorcycle, and SUV. Nor could they decide whether they should sell or rent their Washington house to pay community debt.

**¶7**       In December 2018, Mother petitioned for dissolution, seeking sole or joint legal decision-making and parenting time, spousal maintenance, child support, and community assets. The dissolution dispute spanned several filings and hearings.

**¶8**       In March 2019, the court ordered Father to retrieve Shauna to Arizona within three calendar days of the end of her school year and awarded Mother weekly parenting time. Shauna had not been in Arizona before this order. Three months later, Mother met Father to exchange Shauna. But as Mother drove home, Shauna began arguing about stopping for fast food. The argument escalated until Mother took Shauna's phone. Shauna responded by taking Mother's phone from a dock on the dashboard. Mother had to pull onto the road's shoulder to avoid risking a collision. Shauna called the police, and Mother allowed Father to take Shauna. Father's girlfriend sent Shauna a hands-clapping emoji when Father was called to pick up Shauna.

**¶9**       Given her deteriorating relationship with Shauna, Mother moved the court to appoint a therapeutic interventionist and an advisor to assess Shauna's safety and ensure that Father complied with court orders to allow Mother parenting time. Father, citing costs, responded to both motions arguing that these appointments were unnecessary. During this

time, Father's girlfriend was arrested for DUI when she collided with two vehicles while driving one of the community vehicles. The court appointed both experts.

**¶10**         In February 2020, the therapeutic interventionist met with Mother and Shauna, and Mother acknowledged past parenting mistakes. As a result, Shauna and Mother began to mend their relationship. But Father did not respond to the therapeutic interventionist's multiple attempts to schedule his sessions.

**¶11**         Father dragged his feet in other respects. For example, he disobeyed court orders by failing to pay child support and spousal maintenance. He also did not disclose his updated financial information, passwords to financial accounts such as the mortgage account for the house in Washington, and VA records about his receipt of income since the action's inception.

**¶12**         Eventually, Father absconded with Shauna to Oregon and posted details about the case on social media. The court ordered Father to return Shauna to Arizona by July 2020. Father refused, and the court issued temporary orders awarding Mother sole legal decision-making and designating her the primary residential parent of both children. The court held Father in contempt and awarded Mother attorney's fees.

**¶13**         The court scheduled the dissolution trial for February 2021. But Father alerted the court that he would not appear. Father neither appeared at the trial nor returned Shauna to Arizona, but the court heard testimony from Mother. After making best-interest findings, the court awarded Mother sole legal decision-making and allowed Father four hours of supervised parenting time per week. The court also awarded Mother child support and spousal maintenance and ordered Father to pay for missed payments. After dividing assets, calculating equalization payments, and awarding Mother her attorney's fees, the court determined that Father owed Mother around $72,000. Father appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶14**         Father makes several arguments about the court's jurisdictional and best-interest findings, as well as its orders on child support, parenting time, spousal maintenance, equalization payments, and attorney's fees. To begin, Father seeks leniency as a *pro se* litigant if he confuses legal theories or fails to cite proper legal authority. We cannot afford Father this leniency. *Flynn v. Campbell*, 243 Ariz. 76, 83, ¶ 24 (2017)

("We hold unrepresented litigants in Arizona to the same standards as attorneys.").

**¶15** Generally, we review the superior court's decisions in a dissolution decree for an abuse of discretion. *E.g.*, *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (parenting issues); *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018) (child support); *Hefner v. Hefner*, 248 Ariz. 54, 57, ¶ 6 (App. 2019) (property). A court abuses its discretion when it commits legal error or when the record lacks competent evidence to support the court's decision. *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019). We review legal error *de novo* and affirm findings supported by substantial evidence. *Id.*

## A. The Superior Court Had Jurisdiction to Issue Legal Decision-Making and Parenting Time Orders Concerning Shauna.

**¶16** Father asserts that the superior court lacked subject-matter jurisdiction over Shauna and that Arizona was ill-suited to adjudicate the divorce. Thus, Father claims that an Arizona court cannot exercise jurisdiction under A.R.S. § 25-1031(A).

**¶17** The court determined that it had jurisdiction over the children under A.R.S. § 25-1031(A) because Arizona was the children's "home state." A home state, as applicably defined here, is the "state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." A.R.S. § 25-1002(7)(a). Arizona is Lars's home state. That said, Shauna does not have a home state because she did not reside in a state with a parent or a person acting as a parent for six consecutive months before Mother filed for dissolution.

**¶18** Shauna lived with her grandparents in California from July 10, 2018, and was living there when Mother petitioned for dissolution on December 14, 2018. And her grandparents did not function as persons acting as parents under A.R.S. § 25-1002(7)(a) because they had not claimed legal custody under Arizona law or been awarded legal custody by a court. *See* A.R.S. § 25-1002(13)(b). Indeed, before Father reneged, the grandparents housed Shauna temporarily as an informal arrangement between the parties.

**¶19** Even so, the court had jurisdiction to adjudicate Shauna's custody under A.R.S. § 25-1031(A)(2). Subsection (A)(2) gives a court jurisdiction when no other state has jurisdiction, the child and parents have a significant connection to the state beyond a mere physical presence, and

substantial evidence exists in this state of a significant connection about the "child's care, protection, training and personal relationships." When Mother filed for dissolution in December 2018, she had lived in Arizona with Lars since July 2018, and Father had lived in Arizona since January 2018. Both parents had jobs in Arizona. The parties owned a home and kept three vehicles in Arizona.

¶20 Although Shauna had not physically resided in Arizona until the dissolution filing, the parents agreed that the children's time in California would be temporary until the parents settled in Arizona. Thus, both Shauna and the parties have significant connections in Arizona other than mere physical presence, and substantial evidence in Arizona supports Shauna's care, protection, training, and personal relationships here. *See In re M.S.*, 176 A.3d 1124, 1132, 1134, ¶¶ 15, 21 (Vt. 2017) (Vermont had substantial-connection jurisdiction over a child who had not been to Vermont where the child's parents and brother lived). We thus affirm the court's finding that it had jurisdiction to determine Shauna's legal decision-making and parenting time.[3]

**B.     The Court Did Not Err by Awarding Mother Sole Legal Decision-Making or Granting Father Four Hours of Parenting Time.**

¶21 Father disputes several findings and legal conclusions relating to decision-making and parenting time. In reviewing the superior court's findings, we view the evidence in the light most favorable to support the court's disposition. *Johnson v. Johnson*, 131 Ariz. 38, 44 (1981). Because Father failed to participate in the dissolution trial, the evidence presented to the court is uncontroverted.

¶22 Father challenges the court's consideration of the children's past relationships with the parents as a part of its best-interests analysis under A.R.S. § 25-403(A). He claims that the record does not support the court's finding that Mother was historically the primary caretaker. But Father told the court-appointed advisor that he often traveled for work and

---

[3]     We decline to address Father's assertion that the parents were not domiciled in Arizona for 90 days before the Decree because he did not support it with an argument and because both parties remained in Arizona for more than 90 days with no apparent plan to move before Father fled to Washington. Shauna's attempt to emancipate in Oregon has no legal effect on the home-state issue.

training and was gone for much of the time. He also explained that while Mother expected to be a stay-at-home parent, he had encouraged her to seek additional schooling despite her reluctance to seek a "routine job." And Father admitted that Mother lived with Shauna without Father from January to July 2018 and that Mother recently lived with Lars since October 2018. And for the year before Mother's petition, all of Lars's and most of Shauna's time away from Mother was spent with their paternal grandparents, not Father. Thus, substantial evidence supports the court's finding that Mother has historically been the primary caretaker.

¶23        Father also argues that the court erred by concluding that he may have a mental illness. In the Decree, the court found, "In light of Father's erratic and irrational behaviors, the Court is concerned that he may be suffering from mental health problems."

¶24        The court lacked access to Father's mental health records. But it noted in its parenting analysis that Father had repeatedly refused to disclose mental health records, financial information, and other evidence and had absconded with Shauna without revealing his location to Mother or the court. The court's analysis correctly weighed these behaviors and the potential mental-health condition that they may show. The court did not err.

¶25        Father challenges the court's A.R.S. § 25-403.01(B) findings that Father's conduct was egregious and joint legal decision-making was not logistically possible. But the parties' attempts at joint legal decision-making had failed, mainly because Father repeatedly interfered with Mother's attempts to mend her relationship with Shauna. Moreover, Father's relocation and evasion made joint legal decision-making impossible to enforce under the current plan. *See Canty v. Canty*, 178 Ariz. 443, 449 (App. 1994) (joint custody arrangement became logistically impossible when mother and daughter relocated out of state).[4]

---

4        We decline to address Father's argument that the court's decisions to designate Mother as the primary residential parent and to allow him only four hours of supervised parenting time is "contrary to precedent." Father does not articulate an argument to support his position, and his cited authorities provide no support. *See* ARCAP 13(a)(7)(A) (brief must contain "supporting reasons for each contention . . . with citations of legal authorities and appropriate references to the portions of the record").

¶26        Father argues that the superior court did not have the authority to require the parties to use OurFamilyWizard software. But limiting and monitoring parental communications to specific media falls under the court's power to establish a parenting plan. *See* A.R.S. § 25-403.02(C)(7) (The court's parenting plan must include "[a] procedure for communicating . . . about the child, including methods and frequency."). The court did not err by selecting the software.

**C.        The Court Did Not Abuse Its Discretion by Equitably Dividing the Community Property.**

¶27        The court must divide the community property equitably, though not necessarily in kind. A.R.S. § 25-318(A). We review the court's characterization of property *de novo* and its apportionment for an abuse of discretion. *Davies v. Beres*, 224 Ariz. 560, 562, ¶ 6 (App. 2010). Father disputes many aspects of the court's allocation, and we address each argument in turn.

¶28        Father asserts that the court neglected to include his education expenses in the equalization-payment calculations. But Father agreed to assume his student loans and the costs toward his pilot license as his separate debt at the alternate dispute resolution conference. Father made no effort to challenge the allocation later and cannot now on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300–01 (1994).

¶29        Father disputes the court's equalization about the SUV and motorcycle. Father alleges that Mother provided significantly higher Blue Book values for the vehicles at the trial than their worth. But the uncontested evidence before the superior court included Mother's estimated Blue Book values. But Father's opportunity to challenge the evidence was at the trial, which he voluntarily failed to attend. Likewise, we decline Father's request for remand to redetermine the community debt and its proper allocation as well as reimbursements, waste, and attorney's fees, and Mother's 401(k).[5]

¶30        Father asserts that the court breached federal law by granting Mother one-half of the community interest in Father's Navy Pension Plan.

---

[5]        This court was not presented with the entire record, but because Father failed to provide transcripts from evidentiary hearings, we presume they support the order. *Cullison v. City of Peoria*, 120 Ariz. 165, 168, n.2 (1978).

A community acquires a right in unvested pension benefits upon performance under the employee-spouse's contract. *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977). Further, while a court may award retirement pay under 10 U.S.C. § 1408(c), that amount is constrained by federal law.

¶31  In the Decree, the court held:

> The community has an interest in the following retirement plans:
>
> 1) Father's Military (Navy) Pension
> 2) Father's ASM America Inc. 401(k) Plan
> 3) Father's Thrift Savings Plan
> 4) Father's Edward Jones Traditional IRA.
>
> **IT IS ORDERED** that Mother is entitled to one half of the community interest in each of the above accounts.

The Court then appointed a special master to provide qualified domestic relation orders ("QDRO") to distribute the accounts. Yet the record includes no QDRO for the accounts. As a result, we cannot determine whether the military pension was correctly apportioned. Thus, the record shows no abuse of discretion.

## D. The Court Did Not Err in Determining Child Support.

¶32  Father argues the court failed to adhere to the child support guidelines by declining to use Mother's potential income as estimated by her vocational evaluation, failing to require Mother to adequately prove that she was seeking jobs with greater pay, and including Father's second job in determining child-support calculations.

¶33  When determining spousal maintenance, the court considered Mother's $15-per-hour wage at the warehouse, her prior work history of similar earnings, her recent college education, and her contributions to Father's education.

¶34  The vocational expert concluded that Mother could expect to earn between $29,000 and $35,000 in the greater Phoenix area as a behavioral support specialist without more certification or education. But this prediction assumed full-time work. Given Mother's recent degree, her eventual transfer to a different labor market appears likely, but her near-term success is unclear. And any assumptions over full-time work are questionable given her responsibilities for parenting both children. Thus,

we defer to the court's reasonable inference that her income will not change. *Lawrence v. Valley Nat'l Bank*, 12 Ariz. App. 51, 57 (1970) (We defer to the superior court in matters of factual dispute and resolve inferences in favor of the appellee.).

**¶35**          Father also argues the court erred by including his part-time salary from the Navy reserves in its child-support calculations.

**¶36**          The child support guidelines provide that "[g]enerally, the court should not attribute income greater than what would have been earned from full-time employment." A.R.S. § 25-320(5)(A). But the guidelines allow courts to "consider income actually earned that is greater than would have been earned by full-time employment if that income was historically earned from a regular schedule and is anticipated to continue into the future." *Id.*; *see, e.g.*, *Fiori v. Lanini-Fiori*, No. 1 CA-CV 18-0121 FC, 2019 WL 438795, at *4, ¶ 21 (Ariz. App. Feb. 5, 2019) (earnings from the second job held for over three years with consistent income for past five months); *In re Marriage of Ballard v. Ballard*, No. 1 CA-CV 15-0449 FC, 2016 WL 797012, at *2, ¶ 12 (Ariz. App. Mar. 1, 2016) (earnings from the second job of four years which constituted roughly eight percent of Father's income). The Navy reserve schedule appears regular, as Father acknowledged that he had received around $400 per month since December 2017. He has continued to receive this income for years, and indeed, acknowledges this position as a "second job" on appeal. The court did not err by including Father's Navy Reserve payments as gross income.

## E.    The Court Afforded Father Procedural Due Process.

**¶37**          Due process requires that the parties have "an opportunity to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (quotation omitted). Father did not use his opportunity to participate at the trial but points to his "Notice of Non-appearance" to show that he had good cause not to appear. Father argued that the court was partial to Mother in the notice, rendering his attendance pointless. But a fatalistic attitude toward a hearing's outcome does not constitute a "good cause" for not participating. *C.f. Richas v. Super. Ct.*, 133 Ariz. 512, 514 (1982) (A party who failed to appear could not trigger Arizona Rule of Civil Procedure 55(c)'s good-cause requirement to set aside a default judgment because the party could not show "mistake, surprise, inadvertence or excusable neglect."). The court afforded Father procedural due process.

**F. The Court Did Not Abuse Its Discretion by Awarding Mother Attorney's Fees.**

¶38 Father argues that he cannot afford to pay Mother's attorney's fees. But the court found that Father had superior financial resources under A.R.S. § 25-324. Although the amount in attorney's fees, $56,000, is substantial, the court noted that much of Mother's attorney's work in accruing these fees was necessary only because of Father's conduct. We decline to find the court abused its discretion.

**G. The Court Acted within Its Judicial Capacity.**

¶39 Father argues, without support, that the judicial officer acted beyond her capacity as a judge in her decisions about child support, spousal maintenance, trust account funds, and equalization payments. We disagree. Such allocations are within a family court's authority. A.R.S. §§ 25-318, -319, -320.

## ATTORNEY'S FEES

¶40 Father requested attorney's fees and costs on appeal. We decline to award fees or costs. A.R.S. §§ 12-341, -341.1.

## CONCLUSION

¶41 We affirm.

